UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: AMERICAN EXPRESS<br>ANTI-STEERING RULES<br>ANTITRUST LITIGATION<br><br>This Document Relates To:<br>CONSOLIDATED CLASS ACTION | 11-MD-02221-NGG-RER |
| THE MARCUS CORPORATION,<br>On behalf of itself and all similarly situated persons,<br><br>                         Plaintiff,<br>        -against-<br><br>AMERICAN EXPRESS COMPANY, et. al.,<br><br>                        Defendants. | 04-CV-07355-NGG-RER |

## <u>OBJECTION BY THE UNITED STATES OF AMERICA TO FINAL APPROVAL<br>OF THE AMERICAN EXPRESS CLASS SETTLEMENT</u>

June 6, 2014

The United States objects to the proposed class settlement agreement in *In re American Express Anti-Steering Rules Antitrust Litigation*, No. 11-MD-2221 (E.D.N.Y.) (NGG) (RER) ("MDL 2221") and *The Marcus Corporation v. American Express,* Case No. 04-CV-05432 (S.D.N.Y.) (GBD) (RLE) ("*Marcus*") ("Class Settlement Agreement") (11-MD-02221, Docket Entry ("D.E.") 306-2).

The United States objects because it was impermissibly included within the settlement class. By statute, private parties cannot represent the United States or compromise claims on behalf of the United States without consent of the Attorney General. 28 U.S.C. §§ 516, 519. Without prior notice to or consent of the United States, the Class Settlement Agreement purports to sweep in the United States and its instrumentalities as members of the class. It seeks to release claims of the United States without lawful authority. As a matter of law, these private parties cannot do so. Final approval of the settlement should be denied unless the Class Settlement Agreement is amended to remove the United States and its instrumentalities from the class.

## RELEVANT FACTS

As the Court knows, the United States has a pending law enforcement action against American Express challenging some of the same anticompetitive conduct that is the subject of the class actions in MDL 2221. (*See* Complaint in *United States v. American Express Co., et al*, 10-CV-04496 (E.D.N.Y.), D.E. 1) ("*U.S. v. Amex*"). The Class Settlement Agreement's release excludes claims based on "*parens patriae*, law enforcement, or regulation actions by any government or quasi-governmental entity to

- 1 -

enforce sovereign or quasi-sovereign interests" (11-MD-02221, D.E. 306-2, ¶ 34b) and expressly excludes *U.S. v. Amex* from the release.[1]

Entirely unrelated to law enforcement, various instrumentalities of the United States accept credit cards as part of their operations. For example, credit cards are accepted for purchases at military exchanges. Likewise, many other federal entities, such as the Department of Treasury, accept credit cards for payment of excise taxes, fees, and fines.

The Class Settlement Agreement includes "all Persons that as of the Settlement Preliminary Approval Date or in the future accept any American Express-Branded Cards at any location in the United States." (11-MD-02221, D.E. 306-2, ¶ 2). Absent from this class definition was the language from the Consolidated Class Action Complaint in MDL 2221 specifically alleging that "[t]he Class does not include . . . (ii) any governmental entity. . . ." (11-MD-02221, D.E. 27, ¶17) (emphasis added). The *Marcus* complaint did not expressly state whether governmental entities were included or excluded in the putative class.

When the Department of Justice inquired whether the parties intended to include the United States in the settlement class, class counsel confirmed that "the failure to expressly exclude the United States Government owned card-accepting entities from the

---

[1] "The parties recognize that certain provisions or aspects of the American Express NDPs are currently being challenged by the Department of Justice in [*U.S. v. Amex*]. In the event that such litigation concludes with a judgment, order or consent decree implementing a further revision of American Express's rules, nothing in this release shall be deemed to affect any right that a member of the settlement class may have to seek enforcement of any such judgment, order or consent decree, or to enjoy any benefits or rights to injunctive relief secured by such judgment, order or consent decree." (11-MD-02221, D.E. 306-2, ¶ 35).

definition of the releasing parties was not intentional" and "never came up in our discussions or drafts" with American Express, and that class counsel has "no objection to excluding U.S. card-accepting entities, as you correctly point out that we did in our Complaint." (Ex. 1, Email from G. Friedman to C. Conrath, Apr. 7, 2014).

In contrast, counsel for American Express informed the United States that "this approach was intentional" and U.S. governmental entities were intended by the Defendant to be a part of the settlement class. (Ex. 2, Letter from P. Korologos to C. Conrath, Apr. 17, 2014). The Class Settlement Agreement includes a broad release with no opt-out right by releasing parties. (11-MD-02221, D.E. 306-2, ¶2, 26-27).

## STATEMENT OF OBJECTIONS

1. The United States Government Was Improperly Included in the Class Settlement Agreement.

Federal law provides that "[e]xcept as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested . . . is reserved to officers of the Department of Justice, under the direction of the Attorney General." 28 U.S.C. § 516. In addition, 28 U.S.C. § 519 states that, "[e]xcept as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party . . . ." These statutes embody the longstanding principle that in order to effectively manage the federal government's business, centralized management and control of public litigation is critical. *See ICC v. Southern Railway Co.*, 543 F.2d 534, 536 (5th Cir. 1976).

Recognizing the importance of preventing the adoption of competing or contradictory policies, courts have narrowly construed the "except as otherwise

authorized by law" qualifying language.  Multiple decisions have interpreted this

language to require a "specific authorization to proceed without the advice, assistance, or

supervision of the Attorney General."  *FTC v. Guignon*, 390 F.2d 323, 324 (8th Cir.

1968); *see In re Ocean Shipping Antitrust Litig.*, 500 F. Supp. 1235, 1238-39 (S.D.N.Y.

1980).  Authorization to conduct litigation on behalf of the United States by anyone,

including other federal agencies, cannot be inferred, and requires a "clear and

unambiguous expression by Congress."  *United States v. Hercules, Inc.*, 961 F.2d 796,

799 (8th Cir. 1992).

　　　Despite this clear statutory guidance, the proposed Class Settlement Agreement,

which was negotiated by American Express and class counsel without the participation of

the Attorney General or his designee, purports to resolve potential claims on behalf of the

United States.  Specifically, the Settlement Class in Paragraph 2 of the Class Settlement

Agreement purports to include all "Persons," which is defined to include the United

States or its agencies, instrumentalities, or officers.  Counsel for the United States was

not advised of the inclusion of the United States in the class until the Class Settlement

Agreement was announced and did not consent to its inclusion.  Indeed, in the MDL 2221

Consolidated Complaint, the United States was expressly excluded from the class

definition, which states that "the Class does not include . . . any governmental entity"

(11-MD-02221, D.E. 27, ¶17).  Furthermore, American Express and class counsel cannot

even agree as to whether or not the proposed settlement agreement was intended to

include the United States.  *Compare* Ex. 1, Email from G. Friedman to C, Conrath, Apr.

7, 2014, *with* Ex. 2, Letter from P. Korologos to C. Conrath, Apr. 17, 2014.

Even if, as it contends, American Express intended to include the United States as a party in the proposed settlement agreement, American Express cannot identify any statutory authority that vests either its counsel or class counsel with the authority to represent the interests of the United States in this litigation. Although American Express may argue that the class action procedures and rules set forth in Federal Rule of Civil Procedure 23 constitute a grant of authority by Congress to private attorneys to act on the United States' behalf in such cases, this argument lacks merit because Rule 23 lacks any explicit grant of authority to private class counsel to litigate on behalf of the United States. *See Hercules,* 961 F.2d at 799.

The only authority cited by American Express in support of its contention that the parties can bind the United States to the settlement without the consent of the United States is *Shaw v. Toshiba America Information Systems*, *Inc.*, 91 F. Supp. 2d 942, 953 (E.D. Tex. 2000). *Shaw,* however, supports the contrary position that the Department of Justice must consent in order for the United States to become a member of a class. In this case, American Express seeks to bind the United States to a mandatory class settlement with no opportunity to opt out. In *Shaw*, however, the United States (through the Department of Justice) affirmatively exercised its discretion to consent to being bound by the class settlement, finding it to be "in the best interest of the United States to participate in the class settlement" and that "the benefits [the United States] would receive from the settlement [were] very favorable to the [United States]." *Shaw,* 91 F. Supp. 2d at 977. In the instant case, the Department of Justice has made no such determination to join the settlement class. The United States would instead be involuntarily bound.

American Express further argues that 28 U.S.C. § 516 is nothing more than a ministerial statute, which only serves to clarify who within the United States government is vested with authority to litigate on behalf of the United States. *See* Ex. 2, at 2. American Express appears to be arguing that 28 U.S.C. § 516 and 28 U.S.C. § 519 only limit the ability of government officials other than the Attorney General to litigate on behalf of the government, but do not limit the authority of private attorneys to litigate on behalf of the United States. This interpretation finds no support in the statutory text. Moreover, it is absurd, as it would allow private litigants to file and settle suits on behalf of the United States without explicit statutory authority in situations where federal government officials themselves would be precluded from doing so. *See, e.g.*, *United States v. Walcott*, 972 F.2d 323, 328 (11th Cir. 1992) (settlement set aside where Assistant U.S. Attorney and SBA negotiator lacked settlement authority from the Attorney General). To serve their purposes, namely to allow the Attorney General to effectively manage and control public litigation, 28 U.S.C. § 516 and 28 U.S.C. § 519 must limit the authority of private class action counsel with no connection to the federal government to at least the same degree as they limit the authority of attorneys for federal agencies.

## CONCLUSION

Because American Express is attempting to compromise claims that can only be brought by the Attorney General pursuant to 28 U.S.C. § 516 and 28 U.S.C. § 519, the United States objects to the proposed Class Settlement Agreement. The United States asks the Court to reject the class settlement as improper to the extent it seeks to resolve claims of the United States, unless and until it is amended by the parties to expressly exclude the United States from the settlement class and the release.

Respectfully submitted,

*/s/* Craig W. Conrath
Craig W. Conrath
Mark H. Hamer
Gregg I. Malawer
Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Tel: (202) 532-4562
Fax: (202) 307-9952
craig.conrath@usdoj.gov


STUART F. DELERY
Acting Assistant Attorney General


/s/ Adam J. Schwartz
MICHAEL D. GRANSTON
SARA McLEAN
ADAM J. SCHWARTZ
Attorneys, Civil Division
United States Department of Justice
P.O. Box 261, Ben Franklin Station
Washington, DC 20044
Telephone:  (202) 514-6831
Facsimile:  (202) 514-0280
Email: Adam.Schwartz2@usdoj.gov

Attorneys for the United States

# EXHIBIT 1

From: Gary Friedman [mailto:GFriedman@flgllp.com]
Sent: Monday, April 07, 2014 3:08 PM
To: Conrath, Craig; Philip Korologos
Cc: Kevin J. Orsini; Bill Blechman; James Almon; Mark Wendorf
Subject: RE: Questions concerning MDL 2221 settlement

Craig,

I'm sorry that it has taken so long to get back. Until re-reading your
letter this afternoon, I confess I had filed this in my mind under "Amex's
issue." But I see that you requested our position on the three issues you
raised, so here they are:

1. Speaking only for Class Plaintiffs, I can tell you that the failure
to expressly exclude United States Government owned card-accepting
entities from the definition of the releasing parties was not intentional.
I cannot speak for Amex or its intent, but I can tell you that the
treatment of U.S. Government entities never came up in our discussions or
drafts. Class Plaintiffs have no objection to excluding U.S. cardaccepting
entities, as you correctly point out that we did in our
Complaint. But again, I cannot speak for Amex.

2. The Settlement Agreement does not obligate Amex to alter its
convenience fee rules or policies, and certainly does not direct any
particular treatment with respect to Government contractors.

3. I can confirm that Class Plaintiffs "do not interpret the Class
Settlement Agreement, or any judgment resulting from it, to limit the
United States in any way from asserting any law enforcement claims of any
type in the future, whether or not the relief is specifically sought in
the U.S. v. Amex litigation currently pending."

-- Gary

# **EXHIBIT 2**

April 17, 2014

**By Electronic Mail**
Craig Conrath
U.S. Department of Justice
Antitrust Division
Liberty Square Building
450 Fifth Street NW
Washington DC 20530

*In re American Express Anti-Steering Rules Antitrust Litig.*, MDL 2221
*The Marcus Corporation v. American Express*, Case No. 13-CV-7355

Dear Craig:

I write in response to your letter regarding questions concerning the potential impact of the class settlement in the above-referenced cases. Thank you for your patience in receiving this response.

1.  Inclusion of United States agency or instrumentality merchants in the Settlement Class.

Your understanding is correct that the Settlement Class defined in Paragraph 2 of the Settlement Agreement includes merchants that accept American Express cards even if those merchants are the United States or one of its agencies, instrumentalities, or officers. Paragraph 2 of the Settlement Agreement defines the Settlement Class to include "all Persons that as of the Settlement Preliminary Approval Date or in the future accept any American Express-Branded Cards at any location in the United States." (SA ¶ 2.) "Person" is defined broadly and includes any "governmental authority" and "any other entity whether acting in an individual, fiduciary or other capacity." (*Id.* ¶ 1(rr).) Notably, discovery and other evidence in these cases establish that certain governmental entities including those of the United States accept payment cards, including American Express cards, just as private merchants do.

Contrary to Gary Friedman's email of April 7, this approach was intentional and discussed by Amex's counsel with counsel for the class during negotiations. As you note, the release expressly excludes claims based on "*parens patriae*, law enforcement, or regulation actions by any government or quasi-governmental entity to enforce sovereign or quasi-sovereign interests." (SA ¶ 34(b).) This carve-out from the release and the lack of a carve-out for the United States in the definition of the Settlement Class were discussed during negotiations as a means of ensuring that the United States (or any other law enforcement or regulatory agency) would not lose its *parens patriae* or policing rights to pursue claims against American Express but that American Express would receive certainty and uniformity for all merchants that accept its cards, whether or not those merchants were operated by agencies or instrumentalities of the United States.

You assert in your letter that 28 U.S.C. Sections 516 and 519 mean that "a class represented by private counsel cannot include the United States or its agencies and instrumentalities as class members" and that the United States cannot be bound "in any settlement agreement". As discussed below, however, the statutes do not go as far as your assertions. Indeed, the United States has previously been bound by a class represented by private counsel in at least one class action under Rule 23. Notably, in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 953 (E.D. Tex. 2000), not only was the United States so bound as an absent class member but the United States affirmatively appeared and urged the approval of the class settlement that released claims held by the federal government even though the class was represented by private counsel and DOJ had not participated in that representation. *See id.* (quoting a United States Attorney as stating "it is our opinion that the class settlement provides a fair and reasonable recovery for the United States . . . . Even for a class member as large as the United States Government, the costs and difficulties of litigation are substantial").

Indeed, both Sections 516 and 519 are consistent with the inclusion of merchants that are agencies or instrumentalities of, or are operated by, the United States as absent class members in the Settlement Class. Together, Sections 516 and 519 only delineate the role of the Attorney General if there is to be conduct by or on behalf of the United States in the litigation. Thus, Section 519 states that unless provided otherwise by law, "the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party". Here, neither the United States, nor any of its agencies or officers "is a party" in the above-referenced cases as an absent member of the class. While the United States may arguably become involved in the litigation should it choose to object to the settlement, all Section 519 would then require is that the Attorney General be the one to supervise any appearance necessitated by the United States as an objector.

Similarly, Section 516 states that unless provided otherwise by law, "the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, . . . is reserved to officers of the Department of Justice, under the direction of the Attorney General." As other courts have clearly indicated, Section 516 "serves merely as a housekeeping provision". *U.S. v. Mattson*, 600 F.2d 1295, 1297 n.1 (9th Cir. 1979); *see also S & E Contractors, Inc. v. U.S.*, 406 U.S. 1 (1972) (authority under Section 516 and Section 519 do not provide jurisdiction for Department of Justice to appeal decision of federal agency in absence of other authority). Thus, "the delegation to the Attorney General of authority to conduct litigation concerns allocation of responsibility, *within the government*, for representing the United States as a party." *U.S. v. U.S. Dist. Court for Northern Mariana Islands*, 694 F.3d 1051, 1059 (9th Cir. 2012) (rejecting the argument that district court's broad authority to compel federal government to attend settlement conference interferes with the authority granted under Section 516 and Section 519) (emphasis added). These cases (and others) all make clear that if there is "conduct of litigation" by the United States as a party or because of the United States being "interested" in that litigation, then DOJ has the authority to engage in that conduct.

For an absent class member of a Rule 23(b)(2) non opt-out settlement class in connection with a settlement agreement such as the one here, any such "conduct of litigation" is limited to deciding whether to urge the court to approve or reject the settlement. Should the United States choose to object to the Settlement, Section 516 thus makes it clear that only DOJ may engage in that objection on behalf of the United States. Thus, for example, the Army and Air Force Exchange Service ("AAFES") cannot appear as an objector (at least not without DOJ's consent) should it object to the settlement's impact on AAFES's acceptance of Amex cards at its stores on United States military bases. As an absent class member, the United States is not able to engage in any "conduct of litigation" other than in choosing whether to object and pursuing such objection if it chooses to object, just as no other absent class member may engage in any other conduct of the litigation. This is entirely consistent with *Shaw* where the settlement class was represented by private counsel and included the federal government. There, the United States first decided to opt out, and later opted back in after which a United States Attorney, with the approval of the then head of the Civil Division for the Department of Justice, appeared before the district court and urged approval of the settlement. *See Shaw*, 91 F. Supp. 2d at 977 ("Mr. Bradford also said it was the view of the United States that the proposed Settlement Agreement met all the requirements of a class action, provided substantial benefits to the United States and other class members, and should be 'upheld and found to be a fair settlement.'") (quoting fairness hearing transcript).

We thus believe the language and effect of the Settlement Agreement is both clear and consistent with the authority you have cited.

2.     Convenience Fees

With respect to convenience fees, Paragraph 8(i) of the Settlement Agreement states that nothing in the agreement prevents Amex from having a regulation or agreement with a merchant that "prevents merchants that charge a convenience fee from also charging a surcharge." (SA ¶ 8(i).) Thus, under the settlement, Amex has the ability to preclude merchants from imposing a surcharge on top of a convenience fee, and any surcharge must comply with the terms of the Settlement Agreement. Pursuant to Amex's merchant regulations, a merchant that is permitted to impose convenience fees is not permitted to impose a higher convenience fee on Amex transactions than other general purpose credit or charge cards, among other payment forms. (*See* American Express Merchant Regulations – U.S., §§ 3.2, 12.13.) Nothing in the Settlement Agreement alters this rule or Amex's right to have such a rule. (SA § 8(a).) We also note that any claims for injunctive relief relating to any actual or alleged rules or provisions that limit merchants, in any way, from imposing any restrictions, conditions, or disadvantages on American Express-Branded Cards that are not imposed equally on all other payment products (including with respect to convenience fees) fall within the identical factual predicate of these cases and are thus released under the Settlement Agreement. (*See id.* ¶ 26(a).) The release thus includes claims by government contractors for injunctive relief seeking the ability to impose differential convenience fees among credit and charge transactions.

BOIES, SCHILLER & FLEXNER LLP

3.    <u>Law Enforcement Claims</u>.

We confirm that under Paragraph 34(b), the release does not apply to any claim based on "*parens patriae*, law enforcement, or regulation actions by any government or quasi-governmental entity to enforce sovereign or quasi-sovereign interests." (SA ¶ 34(b).)  Paragraph 34(b) excludes all claims held by class members in this category, regardless of whether such claims are currently pending.

We appreciate your interest in the class settlement, and we are happy to discuss any of the issues raised in this letter or your February 4 letter at your convenience and would welcome a discussion of any authority or interpretation you believe we should consider as contrary to or beyond those we cite herein.

Best regards,

Philip C. Korologos / JFL

Philip C. Korologos

cc:    Mitchell Gentile
       Gary Friedman
       Richard Arnold
       Kevin Orsini