UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

IN RE: AMERICAN EXPRESS
ANTI-STEERING RULES ANTITRUST　　　　　　　　　11-MD-2221-NGG-RER
LITIGATION (II)　　　　　　　　　　　　　　　　　　　ECF CASE

---

THIS DOCUMENT RELATES TO:
CONSOLIDATED CLASS ACTION

---

THE MARCUS CORP.,
On behalf of itself and all similarly situated persons,　　　13-CV-07355-NGG-RER
　　　　　　　　　　　　　　　　　　　　　　　　　　　　ECF CASE
　　　Plaintiff,

　-against-

AMERICAN EXPRESS COMPANY, *et al.*,

　　　Defendants.

---

**STATEMENT OF OBJECTIONS TO THE AMERICAN EXPRESS CLASS ACTION SETTLEMENT OF ABSENT PUTATIVE RULE 23(b)(2) CLASS MEMBERS BLUE CROSS AND BLUE SHIELD HEALTH INSURERS**

　　　　　　　　　　　　　　　　　　　　MILLER & CHEVALIER CHARTERED
　　　　　　　　　　　　　　　　　　　　655 Fifteenth Street, N.W., Suite 900
　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20005
　　　　　　　　　　　　　　　　　　　　(202) 626-5800

　　　　　　　　　　　　　　　　　　　　*Attorneys for Blue Cross and Blue Shield*
　　　　　　　　　　　　　　　　　　　　*Health Insurer Objectors*

**Introduction**

These objections are filed on behalf of a large group of health insurance companies, many of which are independent licensees of the Blue Cross and Blue Shield Association, and their affiliated companies (collectively, the "Health Insurers").[1]  Some of these health insurance companies are listed immediately below.  A complete list of the objectors is provided in Appendix A, along with other identifying information required by the Court's Class Settlement Preliminary Approval Order.

    Blue Cross and Blue Shield of Arizona

    Arkansas Blue Cross and Blue Shield

    Blue Cross and Blue Shield of Louisiana

    Blue Cross and Blue Shield of Minnesota

    Blue Cross and Blue Shield of Nebraska

    Blue Cross and Blue Shield of North Carolina

    Blue Cross and Blue Shield of South Carolina

    Blue Cross and Blue Shield of Kansas City

    Blue Cross Blue Shield of Michigan

    BlueCross BlueShield of Tennessee

    Blue Shield of California

    Cambia Health Solutions, Inc.

---

[1] For ease of reference, we use the term "Health Insurers" to refer to all of the entities submitting this Statement of Objections, even though a small number of them are not health insurers (although they are affiliated with a health insurer).  These non-health insurers, as well as the health insurers, object to the proposed settlement on the grounds that, as applied to merchants generally, it violates due process and Fed. R. Civ. P. 23.  However, this Statement of Objections focuses on issues unique to health insurers.

Health Care Service Corporation (the divisions of which are Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Montana, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Texas)

HealthNow New York Inc.

Highmark Inc.

Horizon Healthcare Services, Inc.

Independence Blue Cross

Premera Blue Cross

CareFirst of Maryland, Inc.

Group Hospitalization and Medical Services, Inc.

Blue Cross of Idaho Health Service, Inc.

Anthem Blue Cross Life and Health Insurance Company

Anthem Health Insurance Company of Nevada

Anthem Health Plans, Inc.

Anthem Health Plans of Kentucky, Inc.

Anthem Health Plans of Maine, Inc.

Anthem Health Plans of New Hampshire, Inc.

Anthem Health Plans of Virginia, Inc.

Anthem Insurance Companies, Inc.

Anthem Life & Disability Insurance Company

Blue Cross and Blue Shield of Georgia, Inc.

Blue Cross Blue Shield of Wisconsin

Blue Cross of California

  CareMore Health Plan of Arizona, Inc.

  CareMore Health Plan of Colorado, Inc.

  CareMore Health Plan of Georgia, Inc.

  CareMore Health Plan of Nevada

  Community Insurance Company

  Compcare Health Services Insurance Corporation

  Empire HealthChoice Assurance, Inc.

  Empire HealthChoice HMO, Inc.

  RightCHOICE Insurance Company

  Rocky Mountain Hospital and Medical Service, Inc.

  UniCare Health Insurance Company of the Midwest

  UniCare Health Plan of Kansas, Inc.

  UniCare Health Plans of Texas, Inc.

  UniCare Health Plan of West Virginia, Inc.

  Unicare Life & Health Insurance Company

  In the Class Settlement Preliminary Approval Order, the Court provisionally certified, for settlement purposes only, "a Settlement Class, from which exclusions shall not be permitted, consisting of all Persons that as of the Settlement Preliminary Approval Date or in the future accept any American Express-Branded Cards at any location in the United States." No. 11-MD-2221, DE 333 at 2; No. 13-cv-7355, DE 141 at 2. The Health Insurers either have, as of the Settlement Preliminary Approval Date (February 11, 2014), accepted American Express-branded cards or they may in the future accept such cards. Accordingly, they are encompassed in the

settlement class. *See, e.g.*, Exh. A (Decl. of Adam Short) at ¶ 4; Exh. B (Decl. of Tom Nightingale) at ¶ 4; Exh. C (Decl. of Peter Was) at ¶ 4.

The principal relief offered to members of the settlement class is the ability to steer customers from credit cards to other forms of payment by surcharging credit card transactions to account for the added merchant fees associated with those transactions. *See* No. 11-MD-2221, DE 362 at 3. Under the proposed Settlement Agreement, merchants must apply a single surcharge amount to all credit card transactions, and are not permitted to engage in "differential surcharging." *Id.* at 3-4. Thus, the settlement does not permit class members to steer customers from American Express cards to lower cost credit cards. Moreover, the proposed Settlement Agreement does not provide any relief from non-surcharge-related anti-steering rules. *Id.* at 4.

In their Motion for Final Approval of Class Action Settlement, the Class Plaintiffs tout the benefit of the injunctive relief provided to the settlement class by claiming that "U.S. merchants are poised to make broad use of their newly won rights to impose surcharges upon credit card transactions." *Id.* Although included in the settlement class, the Health Insurers are not typical U.S. merchants and are constrained by the regulatory environment in which they operate in their ability to benefit from the limited surcharging relief provided by the settlement. In fact, for the reasons set forth below, the surcharging relief is of negligible, if any, benefit to the Health Insurers. Because the injunctive relief is not "appropriate respecting the class as a whole," the settlement class lacks the requisite cohesion. *See* Fed. R. Civ. 23(b)(2). In addition, the proposed Settlement Agreement should not be approved under Federal Rule of Civil Procedure ("Rule") 23(e) because it is not fair and reasonable as to the Health Insurers, so long as they are included in the settlement class. The proposed Settlement Agreement creates a non-opt out Rule

4

23(b)(2) settlement class, which provides them no meaningful relief and yet requires them to provide a broad release of future claims, including for monetary damages.

## Procedural and Factual Background

### A. The Allegations and Proposed Settlement in This Case

There are two operative complaints in this case, one in the Animal Land Consolidated Action and one in the Marcus Action. The thrust of each is that Defendants violated federal antitrust law by imposing rules on merchants that insulate American Express from competition and prevent merchants from protecting themselves against merchant discount fees.

The Animal Land Consolidated Action alleges that "[m]erchants incur fees (known as 'merchant discount fees') each time they swipe an Amex or other payment card" and that "[i]n the absence of the Anti-Steering Rules, merchants would be free to offer consumers incentives to use payment products that carry lower merchant discount fees than do Amex-branded payment cards." No. 11-MD-2221, DE 27 ¶ 1. American Express' so-called "Anti-Steering Rules," "strictly prohibit merchants from engaging in [certain] pro-competitive practices." *Id.* ¶ 28. In particular, the rules prohibit, *inter alia*, indicating a preference for other methods of payment over American Express-branded cards and imposing conditions when an American Express-branded card is accepted that are not imposed on other credit cards or on debit cards. *Id.* The Animal Land Consolidated Action alleges that these rules prohibit merchants from imposing a surcharge on American Express-branded card transactions. *Id.*

The Marcus Action alleges that the merchant discount fee is "considerably higher" than similar fees imposed by Visa or MasterCard, "the merchant discount fee levied by American Express is supracompetitive" and "American Express unlawfully ties its charge card and credit card services through an Honor All Cards policy included in its merchant contract." No. 13-cv-

7355, DE 21 at 2. Under the honor-all-cards policy, "[m]erchants who choose to accept the charge card must agree to accept *all* American Express cards." *Id.* at 2-3.

The proposed Settlement Agreement does not redress the principal grievances identified in the operative complaints, *i.e.*, the anti-steering rules prohibiting merchants from steering customers to credit card products other than those offered by American Express, the honor-all-cards policy, and the imposition of merchant discount fees. If the proposed Settlement Agreement is given final approval, class members will have released their rights to challenge those practices, regardless of whether the practices violate antitrust laws.

The proposed Settlement Agreement purports to offer two types of injunctive relief. First, it allows merchants to "impose a surcharge on Credit Card transactions, including without limitation American Express-Branded Credit Card transactions, without imposing any surcharge upon any transactions made directly with a Debit Card." Settlement Agreement ¶ 8.e. Second, it requires merchants to "accept all American-Express Branded Cards" if they accept any American Express-Branded Cards, with one exception: a merchant can "choose not to accept . . . American Express-Branded Traditional Debit Cards." *Id.* ¶ 8.f. At the time the proposed settlement was submitted, "there currently [were] no American Express-Branded Traditional Debit Cards." *Id.* ¶ 8.h.

The proposed Settlement Agreement contemplates broad releases by all members of the class. In exchange for the minimal surcharging relief, the settlement requires class members to release all claims for injunctive relief and all future claims for damages with respect to American Express's non-discrimination and anti-steering rules, honor-all-cards rules, any current or future rules that tie acceptance by merchants of any type of American Express-branded card to any other type of American Express-branded card, and any rules or provisions that are substantially

6

similar to the current rules and provisions. *Id.* ¶¶ 24-29, 31-34. The release remains in effect for at least 10 years and will end only if American Express changes its honor-all-cards and non-discrimination rules, or Visa or MasterCard change their surcharging, honor-all-cards, and non-discrimination rules – which means the release could last in perpetuity. *Id.* ¶¶ 1(vv), 30-31.

**B. The Health Insurers**

### 1. *Anticipated Use of Credit Cards Resulting from the Implementation of the Affordable Care Act.*

Before 2014, the Health Insurers generally did not engage in significant volumes of credit card transactions. The implementation of the Affordable Care Act, however, created the prospect, that beginning in October 2013, health insurers would begin to engage in substantial volumes of credit card transactions as large numbers of individuals enter the health care market through the Health Care Exchanges mandated by the Act.

The Affordable Care Act's individual mandate provisions require most individuals, beginning after 2013, either to obtain qualifying coverage for themselves and their dependents or to pay a penalty. 26 U.S.C. § 5000A; Treas. Reg. §§ 1.5000A-0 through 1.5000A-5, 78 Fed. Reg. 53646, 53655-64 (Aug. 30, 2013). The Affordable Care Act also requires the creation of Health Care Exchanges, which are internet-based marketplaces set up by the states or federal government to facilitate the purchase of individual and small employer policies. *See* 42 U.S.C. §§ 18031, 18041 [ACA §§ 1311, 1321]. The Congressional Budget Office and Joint Committee on Taxation anticipate that, during the period from 2017 through 2024, as a result of the Affordable Care Act, 24 or 25 million people will obtain health insurance each year through the Health Benefit Exchanges.[2]

---

[2] *See* Jessica Banthin and Sarah Masi, *Updated Estimates of the Insurance Coverage Provisions of the Affordable Care* Act (Mar. 3, 2014), http://www.cbo.gov/publication/45159.

7

The sizeable expansion in the individual market is expected to lead to an increased amount of health insurance premium payments that insurance companies will accept by credit card. Under regulations promulgated by the U.S. Department of Health and Human Services ("HHS"), a Health Care Exchange may establish a process to facilitate the collection and payment of an individual's premiums by electronic means, *e.g.*, by credit card. 45 C.F.R. § 155.240(c). HHS regulations issued in August 2013 specify that health insurers offering coverage through an Exchange must, *"[a]t a minimum*, for all payments in the individual market, accept paper checks, cashier's checks, money orders, EFT, and all general-purpose pre-paid debit cards as methods of payment." 45 C.F.R. § 156.1240(a)(2) (emphasis added); 78 Fed. Reg. 54070, 54126-27 (Aug. 30, 2013). The health insurer also must "present all payment method options equally for a customer to select their preferred payment methods." *Id.* Health Insurers believe that the acceptance of credit cards is necessary in order to competitively sell insurance on the exchanges. *See, e.g.*, Exh. A ¶ 10.

### 2. *Limitations on Health Insurers' Ability to Surcharge*

In October 2013, HHS's Center for Consumer Information & Insurance Oversight, which is charged with implementing many aspects of the Affordable Care Act, issued its "Federally Facilitated Marketplace Enrollment Operational Policy & Guidance," in which it expressly states that a Qualified Health Plan issuer "may not pass on administrative fees for processing a premium payment via credit card."[3] Thus, for individuals who signed up for health insurance on a federal exchange and pay their premiums with credit cards, health insurers are not allowed to surcharge.

---

[3] CMS, *Federally Facilitated Marketplace Enrollment Operational Policy & Guidance* at 13 (Oct. 3, 2013), http://www.cms.gov/CCIIO/Resources/Regulations-and-Guidance/Downloads/ENR_OperationsPolicyandGuidance_5CR_100313.pdf.

But even where surcharging is theoretically allowed and even assuming additional statutes and regulations are not adopted limiting Health Insurers' ability to surcharge, the Affordable Care Act's Medical Loss Ratio requirement limits the financial benefit of the ability to surcharge. The "Medical Loss Ratio" rules require health insurers that offer individual (or group) health insurance coverage to spend a specified minimum percentage of their premium revenue for a calendar year (less federal and state taxes, and licensing and regulatory fees) on enrollees' medical claims and expenditures that improve health care quality, or else they will be required to distribute annual rebates to their customers. 42 U.S.C. § 300gg-18(b); 45 C.F.R. Part 158, Subpart B.[4] For the individual health insurance market, if the result of the fraction is less than 80%,[5] the insurer will be required to issue rebates to each of its subscribers in that market to account for the shortfall. *See* 45 C.F.R. §§ 158.240(c), 158.242(a). Thus, unless they operate at a loss, the Health Insurers can use at most 20% of their revenue to cover administrative costs and their profit.

Merchant discount fees would constitute non-claims costs that would not count toward the annual 80% requirement associated with the individual-market Medical Loss Ratio. Non-claims costs include any administrative expenses that do not constitute adjustments to a health insurer's earned premium revenue, enrollee medical claim costs, expenditures that improve health care

---

[4] A health insurer's Medical Loss Ratio is reported as a fraction, in which the numerator consists of enrollee medical claims and expenditures that improve health care quality (including specified expenses related to health information technology and meaningful use requirements) and the denominator consists of the insurer's earned premium revenue less certain federal and state taxes and licensing and regulatory fees. 42 U.S.C. § 300gg-18(a) (enacted by ACA §§ 1001(5), 10101(f)); 45 C.F.R. §§ 158.110-.170, 158.221.

[5] A health insurer's Medical Loss Ratio must be calculated separately for its collective individual health insurance policies, group health insurance policies sold to "small employers," and group health insurance policies sold to "large employers," respectively. The applicable Medical Loss Ratio threshold for small employer policies is 80 percent (the same threshold as for individual health insurance policies), while the threshold for large employer policies is 85 percent. 42 U.S.C. § 300gg-18(b)(1)(A)(i)-(ii).

quality, or federal and state taxes or licensing or regulatory fees. *See* 45 C.F.R. § 158.160(a), (b)(1). Merchant discount fees do not constitute any of these types of expenditures, but rather fall within the "general and administrative expenses" category of non-claims costs. *See* 45 C.F.R. §§ 158.130(b), 158.140(b)(3), 158.150, 158.160(b)(2)(v). Each year, Health Insurers must calculate their Medical Loss Ratios and are at risk of falling below the threshold. *See, e.g.*, Exh. B at ¶ 7 (noting that Blue Cross and Blue Shield of Kansas City had Medical Loss Ratios of below 80% from 2011-2013).

For Health Insurers at or below the required Medical Loss Ratio threshold, surcharging is of minimal benefit. For Health Insurers already below the Medical Loss Ratio threshold, the surcharge will increase the amount of annual rebates the Health Insurer must provide. For a Health Insurer at or just above the Medical Loss Ratio threshold, surcharging could bring the Health Insurer below the threshold and put the Health Insurer in the annual rebate posture. To simplify, if a hypothetical health insurer has $1,000,000 in premium revenue and $800,000 of qualifying expenditures, its Medical Loss Ratio is at 80% and no rebate is required. The remaining 20% ($200,000) would cover the health insurer's administrative expenses (including merchant discount fees) and profits. If, however, the health insurer decides to surcharge, thereby increasing its revenues to account for $20,000 in merchant discount fees, then its Medical Loss Ratio drops to 78.4% ($800,000 / $1,020,000). The health insurer is now 1.6% below the Medical Loss Ratio and must now provide an annual rebate of $16,320 (1.6% of $1,020,000) to its customers in addition to paying the merchant discount fee.

Thus, as a result of the Medical Loss Ratio rules, for any health insurer at or below the Medical Loss Ratio threshold, roughly 80% of any newly created surcharging revenue must be spent on providing health benefits if the health insurer is to avoid providing additional annual

rebates. Even if those health insurers attempt to recoup the cost of merchant discount fees through higher premiums rather than an express surcharge, the result is the same: roughly 80% of the additional revenue must be used for medical claims and other approved health quality expenditures. In this way, the Health Insurers are fundamentally different from other merchants who can pass on the cost of merchant discount fees to their customers in the form of higher prices or surcharges.

## Argument

### A. The Settlement Class Does Not Possess the Required Cohesion of Interests

"[I]n the context of settlement, Rules 23(a) and (b) . . . 'focus[] court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives.'" *In re Am. Int'l. Group, Inc., Secs. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997)). In addition to meeting Rule 23(a)'s typicality and commonality requirements, *see* Fed. R. Civ. P. 23(a)(2), (3), a class can be certified under Rule 23(b)(2) only if "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011). Because of the non-opt out nature of a Rule 23(b)(2) class, "even greater cohesiveness generally is required than in a Rule 23(b)(3) class." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005); *see also Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142-43 (3d Cir. 1998) ("a (b)(2) class may require more cohesiveness than a (b)(3) class").

The surcharging relief is the main achievement of the rule change relief provided to the class under the proposed settlement. *See* Settlement Agreement ¶ 8. That relief, however, is not

appropriate for categories of class members, including the Health Insurers, nor does it "provide relief to each member of the class," as *Dukes* requires. Accordingly, the class lacks the requisite cohesiveness of interests.[6]

Health insurers, although not typical "merchants," are nonetheless included in the class if they "as of the Settlement Preliminary Approval Date *or in the future* accept any American Express-Branded Cards at any location in the United States." *Id.* ¶ 2 (emphasis added). Because they operate in the highly-regulated health insurance market, the Health Insurers, unlike the typical merchant, cannot simply steer customers to lower-cost payment alternatives or recoup the cost of accepting credit cards either directly through surcharging or indirectly through increased prices for products or services. As noted, as a result of the new HHS guidance, health insurers who insure individuals on the federally-facilitated Heath Care Exchange may not surcharge customers who use credit cards for premium payments.[7]

Even assuming the regulatory regime in which the Health Insurers operate did not preclude surcharging, the Medical Loss Ratio rules greatly limit the benefit of that practice. In the individual market, Health Insurers must spend 80% of their revenue on enrollee medical claims and expenditures that improve health care quality. Thus, if Health Insurers that are not safely above the Medical Loss Ratio threshold attempt to recoup the cost of merchant discount fees either through increased premiums or by surcharging, they will only recoup a small portion of the fees. In general, roughly 80% of the surcharge or increased premium revenue would have to be spent on health care expenditures to avoid the rebate penalty.

---

[6] For similar reasons, the Rule 23(b)(2) settlement class does not satisfy Rule 23(a)'s commonality and typicality requirements and the class representatives do not adequately represent the Health Insurers.

[7] In addition, as noted in the Statement of Objections filed by the National Retail Federation, several states have laws prohibiting surcharging. *See* No. 13-cv-7355, DE 167 at 9, 19-20.

12

The proposed Settlement Class includes a diverse group of entities whose only point of commonality is their past or future acceptance of American Express-branded cards. Because the class includes within it categories of class members who could benefit from the surcharging relief along with categories of class members (such as the Health Insurers) who would obtain little if any benefit from the injunctive relief, the class lacks the necessary cohesion to be certified as a Rule 23(b)(2) settlement class.

### B. The Proposed Settlement Is Not Fair, Reasonable, and Adequate

Under Rule 23(e)(2), a court may approve a Class Settlement Agreement that would bind class members only "on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This fairness inquiry does not "supplant" the Rule 23(a) inquiry discussed *supra*. *See In re Am. Int'l Group*, 689 F.3d at 239 n.8. Rather, it "'function[s] as an additional requirement.'" *Id.* (quoting *Amchem*, 521 U.S. at 621). This Court should not approve the proposed Settlement; it is not fair, reasonable, and adequate.

"One sign that a settlement may not be fair is that some segments of the class are treated differently from others," and a trial court may err in not "adequately accounting for the different abilities (not inclinations) of class members to use the settlement." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 808 (3d Cir. 1995). The settlement benefits only those class members that are likely to surcharge. As set out *supra*, the ability to surcharge provides minimal relief to members of the class, such as Health Insurers, who operate in a regulated environment that either prohibits or substantially reduces the benefits of surcharging. In addition, the proposed settlement is unfair because it does not resolve most of the anticompetitive merchant discount fee practices but nonetheless requires Rule 23(b)(2) class members to release future damages claims, without giving them an opt-out right. *See Dukes*, 131

S. Ct. at 2558 ("individualized monetary claims belong in Rule 23(b)(3)," which provides opt-out rights). Class members' individualized claims cannot be "*precluded* by litigation they had no power to hold themselves apart from." *Id.* at 2559 (emphasis in original).

The proposed settlement creates a non-opt out Rule 23(b)(2) class that requires a broad release of future claims in exchange for relief that is of virtually no benefit to a category of class members (the Health Insurers). The proposed settlement therefore is not fair, adequate and reasonable to the extent it continues to include Health Insurers in the Rule 23(b)(2) settlement class. If the settlement is approved, Health Insurers should be excluded from the settlement class definition.

## **Conclusion**

For these reasons, the Court should reject the proposed settlement.

Dated: June 6, 2014  Respectfully submitted,

/s/ Anthony F. Shelley
Anthony F. Shelley (admitted *pro hac vice*)
Adam P. Feinberg (admitted *pro hac vice*)
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: (202) 626-5800
Facsimile: (202) 626-5801
Email: ashelley@milchev.com
          afeinberg@milchev.com

# CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2014, I electronically filed the foregoing with the Clerk of Court of the United States District Court for the Eastern District of New York using the CM/ECF System, which will send notice of such filing to all Counsel of Record. I further certify that on June 6, 2014 I have mailed the foregoing document by First-Class Mail, postage prepaid, to the Designees for Class Counsel and Defendants, at the following addresses:

Mark Reinhardt
Reinhardt, Wendorf & Blanchfield
E-1250 First National Bank Building
332 Minnesota St.
St. Paul, MN  55101

*Designee of Class Counsel*


John F. LaSalle
Boise, Schiller & Flexner LLP
575 Lexington Ave., 7th Floor
New York, NY  10022

*Designee of Defendants*


                                                      /s/ Anthony F. Shelley