

P.O. Box 1156 ✤ 233 S. Patterson
Springfield, MO 65801
Phone (417)-862-3333
www.oreillyauto.com

June 5, 2014

VIA U.P.S. OVERNIGHT DELIVERY

Clerk of the Court
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

RE: American Express Anti-Steering Rules Antitrust Litigation (II)
Master File No.: 11-MD-02221 (NGG)(RER)

I enclose for filing the original executed Objection to American Express Class Action Settlement in connection with the above-styled matter.

If you have any questions, please feel free to contact me.

Very truly yours,

Jeffrey L. Groves
General Counsel
Vice President of Legal & Claims Services
Direct Line: (417) 829-5763
Fax No.: (417) 829-5726
jgroves2@oreillyauto.com
JLG:bp
Enclosure
cc: Mark Reinhardt, Reinhardt, Wendorf & Blanchfield, via US Regular Mail (with enclosure)
John F. LaSalle, Boies, Schiller & Flexner LLP, via US Regular Mail (with enclosure)

*RIGHT PART, RIGHT PRICE GUARANTEE!*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AMERICAN EXPRESS ANTI-STEERING RULES ANTITRUST LITIGATION (II) | Master File No.: 11-MD-02221 (NGG)(RER) |
| This Document Relates to:<br><br>ALL CASES | |

### Objection To American Express Class Action Settlement

O'Reilly Automotive, Inc and its affiliates object to the final approval of the proposed American Express Class Action settlement agreement dated December 19, 2013. As used in this Objection, affiliates mean the corporate entities identified in footnote 1 below.[1] The Company has standing as a putative class member to object to the settlement because it has accepted American Express ("Amex") cards on the date that the proposed class settlement was preliminarily approved (and for many years before then), and the Company, through its subsidiaries and affiliates, continues to accept Amex cards today. The Company objects to the proposed Amex class settlement ("Amex class settlement") for the reasons set forth below.

1.  The Amex class settlement does not stop the Amex anti-steering provision in the Company's acceptance agreement from eliminating horizontal price competition between Amex and other network credit cards, including Visa and MasterCard, for the Company's

---

[1] O'Reilly Automotive, Inc. or "Company" means, individually and collectively, its subsidiaries and corporate affiliates whom it controls including O'Reilly Automotive Stores, Inc. O'Reilly Auto Enterprises, LLC f/d/a CSK Auto, Inc. and its former holding company CSK Auto Corp.

payment card volume. This is because, among other reasons, the Class settlement leaves intact the Amex prohibition on a merchant pricing Amex cards differently than other networks' credit cards based on a merchant's cost of accepting those cards. In fact, because the settlement only allows merchants to price Amex and other network payment cards at the same level, Amex has an incentive to keep its merchant swipe fees higher than the fees charged to accept other credit cards, and even to increase them. The Company cannot respond to Amex's high fees by stopping Amex acceptance because certain cardholders insist on using their Amex card to obtain more expensive rewards on those cards.

2.   If the Company decides to surcharge Amex payment cards in the future, even at the same level as other network cards (i.e., parity surcharging), then the Amex class settlement would give Amex the right to terminate the Company's acceptance agreement with Amex as long as Amex maintained that the Company's surcharging of Amex cards was not the "sole" reason for it terminating the Company. If the Company's surcharging Amex payment cards was anything other than the "sole" reason for Amex's termination decision – for instance if it was the predominate reason for that decision – then Amex could claim the right to terminate the Company's acceptance agreement. This effectively and unreasonably gives Amex the power in practical terms to control whether the Company surcharges Amex cardholders.

3.   The Amex class settlement does not concretely commit Amex to do anything because it allows Amex to back out of the settlement for years to come based on events that have not occurred. For example, paragraph 62(a) of the Amex class settlement gives Amex the right to terminate the agreement if the final class settlement agreement in the *MasterCard/Visa* case, MDL 1720 (E.D.N.Y) is not approved including after appeals have run.

The class settlement in MDL 1720 is on appeal and it could take years before that appeal process has run. The Amex class settlement appears to provide that Amex can wait until the MDL 1720 appeals process runs before doing anything else required in the Amex class settlement agreement (perhaps other than paying the Class lawyers) while merchants who are stuck in the Amex class settlement lose their rights *now* to enjoin Amex's alleged anticompetitive conduct.

4. In order to realize the benefits of the final class settlement in MDL 1720 – in which Visa and MasterCard materially changed their surcharge rules and made other changes governing merchant acceptance of Visa and MasterCard cards – the comparable acceptance provisions in the Company's acceptance agreement with Amex must be similarly changed. However, the Amex class settlement fails to make changes comparable to those made by Visa and MasterCard in the MDL 1720 final class settlement agreement. As a result, the Company is unable to realize the benefits of the Visa/MasterCard final class settlement agreement in enabling the Company to use price competition at the point of sale among Amex and other network cards such as Visa and MasterCard to lower the Company's acceptance costs unless the Company chooses not to accept Amex cards any longer. Not accepting Amex cards at the Company's stores is not a viable commercial option for the Company because our competitors accept Amex cards and the Company would not want to lose customers to rivals because they accept Amex cards and the Company does not.

5. The scope of the release in the Amex class settlement is unreasonably broad. The release in paragraph 26 of the agreement extinguishes any past or future injunctive relief claim and any future damage claim on account of any Amex rule or provision that in substance

limits merchants' ability to prefer a network payment card other than Amex based on price or communication with merchants' customers. The broad release also requires merchants to give up their rights to challenge Amex's anti-class action arbitration provision and Amex rules or provisions that require merchants to accept all Amex cards or that ties acceptance by merchants of an Amex branded card to another type of Amex branded card. Requiring the Company to give up its future damage claims without the opportunity to opt out of the Amex settlement class deprives the Company of its due process rights. *See* Fed.R.Civ.P. 23(b)(3); *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2557 (2011).

6. The Amex class settlement takes away valuable rights of the Company as described above and does not provide for needed relief in terms of Amex's anticompetitive restrictions on merchant acceptance of Amex cards. Under the circumstances, Amex's payment of up to $75 million to the Class lawyers and $0 to the Class seems unreasonable.

Respectfully submitted:

_[signature]_ Trover
**Name**

VP Legal / General Counsel
**Title** O'Reilly Automotive, Inc

233 S Patterson
**Street address**

Springfield, MO 65804
**City, State, Zip code**

417-862-3333
**Telephone number**