UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————

IN RE AMERICAN EXPRESS
ANTI-STEERING RULES                              11-MD-02221-NGG-RER
ANTITRUST LITIGATION (II)                         ECF CASE

———————————————————————

THIS DOCUMENT RELATES TO:                  Judge Garaufis
CONSOLIDATED CLASS ACTION

———————————————————————

THE MARCUS CORP.,                                  13-CV-07355-NGG-RER
On behalf of itself and all similarly situated persons,   ECF CASE

        Plaintiff,

   -against-

AMERICAN EXPRESS COMPANY, et al.,

        Defendants.

———————————————————————

OMNIBUS OBJECTIONS TO THE AMERICAN EXPRESS CLASS ACTION SETTLEMENT
OF ABSENT PUTATIVE RULE 23(B)(2) CLASS MEMBERS
TARGET CORPORATION, MACY'S, INC., KOHL'S CORPORATION, THE TJX
COMPANIES, INC., STAPLES, INC., J.C. PENNEY CORPORATION, INC., OFFICE
DEPOT, INC., L BRANDS, INC., BIG LOTS STORES, INC., PNS STORES, INC., C.S. ROSS
COMPANY, CLOSEOUT DISTRIBUTION, INC., ASCENA RETAIL GROUP, INC.,
ABERCROMBIE & FITCH, OFFICEMAX INCORPORATED, SAKS INCORPORATED,
THE BON-TON STORES, INC., CHICO'S FAS, INC., LUXOTTICA U.S. HOLDINGS
CORP., AMERICAN SIGNATURE, INC., AND LORD & TAYLOR, ACQUISITIONS, INC.

                    CLARICK GUERON REISBAUM LLP
                    220 Fifth Avenue
                    14th Floor
                    New York, New York 10001
                    (212) 633-4310

                    VORYS, SATER, SEYMOUR AND PEASE LLP
                    52 East Gay Street
                    Columbus, Ohio 43215
                    (614) 464-6400

                    *Attorneys for Objectors*

## I.    PRELIMINARY STATEMENT

The Target Objectors[1] object to the Rule 23(b)(2) settlement because it tramples on the substantive and contractual rights of many of the Target Objectors, would certify a class that fails to comply with Due Process and Rule 23, provides empty relief that stifles rather than promotes competition, and saddles merchants with an overbroad release that would insulate Defendant American Express ("Amex") from liability for its anticompetitive conduct for at least a decade.

The mandatory settlement class violates the Rules Enabling Act by nullifying the contractual alternative dispute resolution ("ADR") rights of class members including many of the Target Objectors.  Moreover, the variety of ADR provisions found in the contracts of putative class members – as illustrated by the variety of provisions in the Target Objectors' contracts with Amex – renders the class uncertifiable under Rule 23(a) by destroying any claim of commonality or typicality.  The fact that the Class Plaintiffs fought so hard to get out from under the ADR provisions in their contracts further demonstrates that they cannot represent adequately those class members who may value the ADR rights in their contracts with Amex.

Likewise, the settlement class cannot be certified under *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), which holds that a Rule 23(b)(2) class may be certified only in cases in which a single injunction will provide indivisible relief that affects every class member uniformly.  Here, the relief is not true injunctive relief and does not provide relief to all class members.  The Target Objectors and class members would also be stripped of their rights to sue

---

[1] The Target Objectors are Target Corporation, Macy's, Inc., Kohl's Corporation, the TJX Companies, Inc., Staples, Inc., J.C. Penney Corporation, Inc., Office Depot, Inc., L Brands, Inc., Big Lots Stores, Inc., PNS Stores, Inc., C.S. Ross Company, Closeout Distribution, Inc., Ascena Retail Group, Inc., Abercrombie & Fitch, OfficeMax Incorporated, Saks Incorporated, the Bon-Ton Stores, Inc., Chico's FAS, Inc., Luxottica U.S. Holdings Corp., American Signature, Inc., and Lord & Taylor Acquisitions, Inc.  Objectors PNS Stores, Inc., C.S. Ross Company, and Closeout Distribution, Inc. are affiliated with Big Lots Stores, Inc.  For simplicity, all four entities will be referred to as Big Lots throughout.

for future damages in violation of the teachings of *Dukes*, the Seventh Amendment and the Due Process Clause.

Finally, the settlement is neither fair, reasonable nor adequate.  It allows Amex to maintain its honor-all-cards rule and almost all of its non-discrimination rules.  The only "consideration" merchants receive is a rule change to allow merchants to surcharge payment card transactions under very limited circumstances.  Unlike the settlement in MDL 1720, under the Amex settlement a merchant can surcharge Amex cards only if it surcharges *all* other credit cards – thus destroying any possible competition among payment card networks for merchant acceptance.  Although Class Plaintiffs tout the settlement as a triumph of competition, in fact the settlement insulates Amex from liability for its anticompetitive rules and conduct by forcing merchants to provide Amex a broad release that will allow it to continue other rules and regulations and anticompetitive conduct unhindered for a decade or longer.

The proposed settlement class cannot be certified because 1) it would strip many of the Target Objectors of their ADR rights in violation of the Rules Enabling Act; 2) it violates the teachings of *Dukes*; and 3) it fails to meet the requirements of Rule 23(a).   Additionally, the proposed settlement cannot be approved because it is neither fair, reasonable nor adequate.  Accordingly, this Court should deny the motion to approve the settlement.

## II.    BACKGROUND

### A.    The History of the Litigation

In 2003, Italian Colors Restaurant filed a class action complaint against Amex alleging violations of the Sherman Act.  The case was transferred from the Northern District of California to the Southern District of New York, where it was consolidated with other class actions as *In re American Express Merchant Litigation*.  Amex moved to dismiss in favor of arbitration based on

a clause in its Card Acceptance Agreement with Italian Colors.  The parties litigated the issue for almost a decade until the Supreme Court ruled in June 2013 in Amex's favor and held that the arbitration clause, which also precluded class resolution of claims, must be enforced.  *See Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013).

In 2004, The Marcus Corporation ("Marcus") filed a putative class action that asserted tying claims against Amex.  *See* Class Pls.' Mem. in Support of Mot. for Final Approval of Class Action Settlement at 11 n.5, Apr. 15, 2014, ECF No. 362 ("Class Pls.' Mem.").  Beginning in 2005, other putative class actions and individual actions challenging Amex's anti-steering and anti-surcharging rules were filed.  In 2011, the consolidated *Animal Land* Complaint was filed in MDL 2221 and captioned *In re: American Express Anti-Steering Rules Antitrust Litigation*.  The *Animal Land* Complaint sought certification of both a Rule 23(b)(3) damages class and a Rule 23(b)(2) injunctive relief class of merchants that have accepted Amex-branded cards.

In August 2013, after the Supreme Court decided *Italian Colors*, Amex moved to dismiss the *Animal Land* Complaint in favor of arbitration on the same grounds.  At the same time, Amex was negotiating the current proposed settlement with a group of plaintiffs whose claims were on the brink of dismissal.

### B. The Proposed Settlement

The proposed settlement would certify a Rule 23(b)(2) class of "all Persons that as of the Settlement Preliminary Approval Date *or in the future* accept any American Express-Branded Cards at any location in the United States (including at a physical merchant location, online and mobile application)," excluding Defendants and related parties.  Class Settlement Agreement ("Settlement Agreement") ¶ 2, Jan. 7, 2014, ECF No. 306-2 (emphasis added).  The class specifically includes "all Persons, described in Paragraph 2 above, *regardless of whether such*

*Persons have restricted, in any way, the means by which they can resolve disputes against Defendants* or the procedural mechanisms available for the resolutions of disputes against the Defendants." *Id.* ¶ 3 (emphasis added). Significantly, the definition of the Settlement Class does not carve out merchants that have co-branding agreements with Amex or governmental entities, as the class definition in the *Animal Land* Complaint did.[2] *See* Consol. Class Action Compl. ("*Animal Land* Compl.") ¶ 17, 11-MD-02221-NGG-RER, Mar. 23, 2011, ECF No. 27.

The proposed settlement would not touch Amex's honor-all-cards rule or most of its non-discrimination rules. Instead, as consideration Amex agrees to allow merchants to surcharge Amex cards, but only if the merchant "imposes a surcharge for *all* Credit Cards accepted" and also complies with other detailed requirements. Settlement Agreement ¶ 13(b) (emphasis added); *see also id.* ¶ 8(a). Further, even though Amex charges merchants the highest fees of any card network, merchants may only apply a surcharge that is no higher than "any surcharge imposed on transactions effected with any other Credit Card, payment card, payment method, products or services accepted by the merchant." *Id.* ¶ 8(b). Merchants are forbidden from telling their customers what they pay to Amex on card transactions, and therefore cannot inform customers that the surcharge amount is less than their costs of accepting Amex. *Id.* ¶ 13.

Because the settlement makes surcharging credit cards an all-or-nothing proposition, it affirmatively undercuts merchants' surcharging abilities in another important way. Under the proposed settlement reached in MDL 1720, merchants may use surcharging to favor one network over another, for example by surcharging Visa transactions and not MasterCard transactions. *See* Mem. and Order, *In re Payment Card Interchange Fee and Merchant Discount Antitrust*

---

[2] Objector Macy's has a co-branding agreement with Amex and was specifically excluded from the class definition in the *Animal Land* Complaint. Presumably, Macy's is now being dragged into this matter because of Amex's desire for an all-encompassing release.

*Litig.*, No. 05-MD-1720 (JG) (JO), at 32-33, Dec. 13, 2013, ECF No. 6124.  Because the proposed Amex settlement requires a merchant that wants to surcharge Amex to surcharge *all* credit cards, merchants that wish to surcharge Amex must surrender their right to engage in the differential, interbrand surcharging permitted by the MDL 1720 settlement.  The settlement thus thwarts the ability of merchants to exercise even the limited differential surcharging rights they received through the settlement of MDL 1720 and destroys any price transparency that the MDL 1720 settlement might have added to the system.[3]

Class plaintiffs argue that the surcharging relief is meaningful because it allows merchants to steer consumers from credit cards to debit cards and there is a "vast price differential" between credit and debit cards.  *See* Class Pls.' Mem. at 3.  The fallacy in that argument is that credit cards and debit cards are different products.  *See In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-CV-5238 (JG), 2003 U.S. Dist. LEXIS 4965, at *8-9 (E.D.N.Y. Apr. 1, 2003) ("Overwhelming evidence establishes that merchant demand for credit card services is distinct from merchant demand for debit card services: those services are sold separately; many merchants would refuse to use off-line debit services if given the choice to do so; and the defendants themselves have repeatedly acknowledged in their business strategy and marketing activities the distinctive attributes of their off-line debit services compared to their credit card services.").  Consumers use debit cards differently because debit cards are linked to the consumers' bank accounts and money spent in debit card transactions is automatically deducted from such accounts.  Credit cards, on the other hand, allow consumers to access credit and make purchases that exceed the balances of their bank accounts.  Debit cards and credit

---

[3] The Target Objectors also objected to the approval of the settlement in MDL 1720 and are now appealing the district court's ruling certifying the 23(b)(2) settlement class and granting final approval of the settlement.

cards also may offer different forms of rewards programs, purchase programs, and protection against fraud.[4] It also strains credulity to believe Amex would agree to this settlement if it actually thinks that steering from credit to debit poses a significant threat to its business or income.

A number of states prohibit surcharging.[5] Merchants in those states therefore cannot benefit from the proposed settlement. In addition, the settlement agreement allows Amex to "buy off" the surcharging rights of individual merchants. Settlement Agreement ¶ 10. As a result, even if the limited surcharging permitted by the settlement could have ameliorative effects on merchant fees – which the Target Objectors question – the settlement hands Amex the ability to undercut whatever pro-competitive effect there might be. By strategically selecting merchants to buy off – such as a large competitor in an industry – Amex could discourage surcharging by other businesses in that industry because they would do so at the risk of consumer backlash for imposing surcharging when their principal competitor does not.[6]

_____

[4] Moreover, because many Amex cards are used as corporate cards for reimbursable business travel and expenses, the users of those cards may not switch to using debit cards in the face of surcharging.

[5] *See* Cal. Civ. Code § 1748.1(a); Colo. Rev. Stat. § 5-2-212(1); Conn. Gen. Stat. § 42-133ff(a); Fla. Stat. Ann. § 501.0117(1); Kan. Stat. Ann. § 16a-2-403; Me. Rev. Stat. tit. 9-A, § 8-A 509(1); Mass. Ann. Laws ch. 140D, § 28A(a)(2); Okla Stat. Ann. tit. 14A, § 2-417(A); Tex. Fin. Code Ann. § 339.001(a); Utah Code Ann. § 13-38a-302. Legislation creating similar bans is pending in other states. *See* Kevin Wack, *18 States Considering Bans on Credit Card Surcharges*, American Banker (Mar. 28, 2013, 10:22 AM ), http://www.americanbanker.com/issues/178_61/18-states-considering-bans-on-credit-card-surcharges-1057901_1.html (proposals to outlaw surcharging pending in Arkansas, Hawaii, Illinois, Indiana, Kentucky, Maryland, Michigan, Missouri, Nevada, New Jersey, New Mexico, Pennsylvania, Rhode Island, South Carolina, Tennessee, Utah, Vermont, and West Virginia). After the *American Banker* article was published, Utah enacted its statute.

The New York anti-surcharging statute was construed in *Expressions Hair Design v. Schneiderman*, No. 13 Civ. 3775, 2013 U.S. Dist. LEXIS 143415 (S.D.N.Y. Oct. 3, 2013). That decision is now on appeal.

[6] Visa and MasterCard also may buy off surcharging rights from merchants under the MDL 1720 settlement. Because the Amex settlement allows a merchant to surcharge Amex only if it

In exchange for this grudging rule change, the settlement requires class members to release *all* claims for injunctive relief and *all* future claims for damages with respect to Amex's non-discrimination and anti-steering rules, honor-all-cards rules, any current or future rules that tie acceptance by merchants of any type of Amex-branded card to any other type of Amex-branded card, and any rules or provisions that are substantially similar to Amex's current rules and provisions. Settlement Agreement ¶¶ 24-29, 31-34. The Release remains in effect for at least ten years and will end only if Amex changes its honor-all-cards and non-discrimination rules, or Visa or MasterCard change their surcharging, honor-all-cards, and non-discrimination rules. Thus, the release could last in perpetuity and may be used to further lock in the alignment of Amex's rules and practices with those of its principal competitors. *Id.* ¶¶ 1(vv), 30.

The putative class members will receive no monetary relief in exchange for the release they would be forced to provide to Amex. However, Amex has agreed to pay class counsels' fees and costs, up to $75 million. *Id.* ¶ 55. That payment, and a minor change in its rules that will actually insulate it from competition, is a small price for Amex to pay for a sweeping release of claims that might have been pursued by millions of merchants.[7]

C.     **The Target Objectors Have a Variety of Dispute Resolution Provisions in Their Contracts with Amex**

According to Class Plaintiffs, "virtually every Amex-accepting merchant in the U.S. was subject to a binding arbitration clause with American Express." *See* Class Pls.' Mem. at 13.

---

surcharges all other credit cards, any merchant whose surcharging right has been bought off by Visa or MasterCard will also be barred from surcharging Amex, without getting any additional consideration for forgoing surcharging Amex cards.

[7] As counsel for the individual merchant plaintiffs cogently noted at the February 6, 2014 hearing, "American Express is getting a release for an anticompetitive system that Visa and MasterCard agreed to change in their settlement and paid seven and a half billion dollars to get the release, and they are trying to get the whole thing for $75 million." Tr. of Conf. Before the Honorable Nicholas G. Garaufis United States District Judge at 8:11-15, Feb. 6, 2014, ECF No. 331.

While the Target Objectors are not in a position to dispute or confirm this assertion, ████████. Moreover, it is clear that the dispute resolution provisions merchants have with Amex are not monolithic. Even among the Target Objectors that have ADR provisions in their contracts, there are a variety of different provisions, with unique requirements.

These dispute resolution provisions reflect the Target Objectors' negotiated agreements with Amex regarding the nature of their relationship.  The provisions may vary in the details of

the dispute resolution procedures that will be exercised, but they have one thing in common – they provide most of the Target Objectors with some control over dispute resolution and litigation.

## III.   ARGUMENT

### A.   The Proposed Settlement Class May Not Be Certified

To obtain final certification, Class Plaintiffs must demonstrate that the proposed class meets all of the requirements of Rule 23(a) and Rule 23(b)(2). *See Dukes*, 131 S. Ct. at 2551 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.") (emphasis in original).  "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id.* (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982)).  In the Second Circuit, plaintiffs bear the burden of establishing that a class should be certified by a preponderance of the evidence.  *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 202 (2d Cir. 2008) ("[T]he preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements."); *accord In re Am. Int'l Group, Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012).

When, as here, a court is asked to certify a class for settlement purposes only, "the moment of certification requires 'heightened attention.'"  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848-49 (1999) (alteration in original) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *see also Amchem Prods.*, 521 U.S. at 621 ("[T]he standards set for the protection of absent class members serve to inhibit appraisals of the chancellor's foot kind class certifications dependent upon the court's gestalt judgment or overarching impression of the settlement's fairness.").  The Court's role in examining the propriety of certification is even more

11

important at this stage of the proceedings where the defendant has no further incentive to challenge certification, and every incentive to see the class certified and the settlement approved.

Here, Class Plaintiffs have offered *no* evidence that the proposed settlement class should be certified following the required "rigorous analysis" of the Rule 23 criteria.  Indeed, Class Plaintiffs admit the opposite and obvious:  that "the risk of being unable to certify a class are [sic] significant . . . ."  Class Pls.' Mem. at 25.  In fact, the difficulties the Class Plaintiffs face in certifying a Rule 23(b)(2) settlement class are insurmountable.[9]

### 1.    The Proposed Settlement Class Violates the Rules Enabling Act

████████████████████████████████████████████████████████████████

████████████████████████████████████████  For almost a decade, Amex fought to vindicate the ADR rights in its merchant agreements.  Now, in order to obtain a sweeping release for its future anticompetitive conduct, Amex has reversed its position, and seeks to nullify the ADR provisions in those contracts.  The settlement agreement would breach Amex's agreements with class members, wrenching control over the resolution of disputes from merchants without their consent.  However, neither Class Plaintiffs, Amex, nor this Court may use the vehicle of a mandatory Rule 23(b)(2) settlement to strip merchants of their substantive contractual rights – including the right to avoid class litigation – without their consent.

---

[9]   The *Grinnell* factors that the Court must apply when determining whether to approve a settlement include the risk of maintaining the class action through trial, not the risk of never being able to certify a class in the first place.  *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  The Court must address the appropriateness of class certification separate from the question of whether the settlement is fair, reasonable, and adequate under the *Grinnell* factors.  "Rule 23 requires protections under subdivisions (a) and (b) against inequity and potential inequity at the pre-certification stage, quite independently of the required determination at postcertification fairness review under (e) that any settlement is fair in an overriding sense." *Ortiz*, 527 U.S. at 858; *see also Amchem Prods.*, 521 U.S. at 621 ("if a fairness inquiry under Rule 23(e) controlled certification, eclipsing Rule 23(a) and (b), and permitting class designation despite the impossibility of litigation, both class counsel and court would be disarmed").

The Rules Enabling Act, 28 U.S.C. § 2072(b) "forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" *Dukes*, 131 S. Ct. at 2561; *see also Ortiz*, 527 U.S. at 845 (noting the tension between the proposed Rule 23(b)(1) class settlement and the Rules Enabling Act); *Amchem Prods.*, 521 U.S. at 613 ( "Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act."). Contractual ADR provisions create substantive rights that trigger the protections of the Rules Enabling Act. The Federal Arbitration Act, 9 U.S.C. § 2 ("FAA"), "creates federal substantive law requiring the parties to honor arbitration agreements." *Southland Corp. v. Keating*, 465 U.S. 1, 15 n.9 (1984).

Amex invoked its substantive ADR rights in *Italian Colors*, arguing that the "'federal substantive law of arbitrability' does not allow courts to promulgate judge-made rules that *frustrate* the FAA's purposes, on the theory that doing so might advance the purpose of some other federal law." Brief of Petitioner, *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013) (No. 12-1330), 2012 S. Ct. Briefs LEXIS 5472, at ** 55 (emphasis in original). The Supreme Court agreed, observing that it was likely that "invalidating private arbitration agreements denying class adjudication, would be an "abridg[ment]" or "modif[ication]" of a "substantive right forbidden" by the Rules Enabling Act. *Italian Colors Rest.*, 133 S. Ct. at 2309-10.

For years, Amex embraced the importance of its contractual ADR rights and fought to enforce those rights against Class Plaintiffs who wanted to be free of them. Now, in order to settle and obtain a release governing a broad swath of its future conduct, Amex is happy to waive its right to enforce the arbitration agreements. However, the agreements and the benefit of the agreements go both ways. Under the Rules Enabling Act, a mandatory Rule 23(b)(2) settlement class cannot be used to strip merchants of their dispute resolution rights.

2.     The Proposed Settlement Class Does Not Satisfy Rule 23(a)

a.     *Commonality and Typicality Are Not Satisfied*

As the Supreme Court has recognized, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 158 n.13. "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Dukes*, 131 S. Ct. at 2551 (emphasis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

The existence and variety of arbitration and other ADR provisions, as well as clauses insuring that any dispute resolution or litigation will be on an individual basis, in the putative class members' agreements with Amex destroy typicality. The threshold question in any dispute – namely, when and how the dispute will be resolved – will depend on the specific contractual ADR provisions applicable to individual merchant claims. *See In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 861 (D. Md. 2013) (noting that "[s]ome courts have held that where certain members of a class are subject to contracts containing arbitration clauses, while other class members are not, those differences in contractual relationships destroyed the commonality and typicality of the class."); *see also Renton v. Kaiser Found. Health Plan, Inc.*, No. C00-5370RJB, 2001 U.S. Dist. LEXIS 20015, at *21 (W.D. Wash. Sept. 24, 2001) (named plaintiff's claims are not typical because she is not subject to an arbitration provision while other putative class members are subject to such an agreement).

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████



The fact that Class Plaintiffs have assiduously attempted to avoid the ADR terms in their contracts further highlights the lack of commonality and typicality in this case. Class Plaintiffs want to avoid their contractual rights – but putative class members, including the Target Objectors, may have different opinions about enforcing their agreements.

Class Plaintiffs and Amex now seek to ignore these fundamental variations in the interests and rights of the putative class members in order to cobble together a settlement that provides little relief to class members but an expansive release to Amex. Amex is contractually bound to abide by a variety of different ADR processes when resolving disputes with its merchants. While some merchants may wish to waive their rights under these agreements, others may not. As a result, the commonality and typicality requirements of Rule 23(a) are not satisfied.

> ### b. Adequacy of Representation Is Not Satisfied

The Rule 23(a)(4) adequacy of representation requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods.,* 521 U.S. at 625. Class Plaintiffs must show that they "'have an interest in vigorously pursuing the claims

of the class, and must have no interests antagonistic to the interests of other class members.'" *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). "Adequacy of representation must be determined independently of the fairness of the settlement . . . ." *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013). In this case, Class Plaintiffs cannot adequately represent the interests of absent class members.

Class Plaintiffs have demonstrated their desire to avoid the application of the arbitration provisions in their contracts with Amex. Indeed, Class Plaintiffs depict the fact that they obtained this settlement *despite the arbitration provisions* in their contracts as a boon to all merchants. *See* Class Pls.' Mem. at 13-14. This argument, however, falsely assumes that all absent putative class members have the *same* interests in avoiding the provisions of their agreements with Amex that Class Plaintiffs have. Class Plaintiffs assign little or no value to the ADR provisions in their contracts and are therefore happy to negotiate away the contractual arbitration and litigation rights of absent class members. However, others in the class may value these rights. Class Plaintiffs who agree to a settlement that thwarts the ability of class members to enforce valued contract rights have not adequately represented the interests of those merchants that value their dispute resolution rights.[10]

Neither can Class Plaintiffs adequately represent the interest of Objector Macy's or any other co-branding partner of Amex. The relationship between co-branding partners and Amex is necessarily different from the relationship between Amex and other merchants. For example, for

---

[10] Class Plaintiffs also represent only a minute subsection of the many industries included in the proposed class. Five of the eight Class Plaintiffs are restaurants. One is a gas station, one is a pet transport company, and one operates movie theaters and hotels. None are traditional retailers. There is no reason to believe that the interest in the surcharging relief are the same for merchants in these industries as they are for department stores, grocery stores, and other retailers.

Macy's to take advantage of the surcharging rule change the settlement provides, it would have to harm the value of its own Macy's Amex card. Further, Class Plaintiffs laud the settlement as a means for merchants to move customers from using credit cards to using debit cards. However, a co-branding partner, which earns economic benefits from customers' use of its cards, has no interest in moving customers from its card (*i.e.*, a Macy's Amex card) to debit cards.[11]   Its interests are exactly the opposite, to move customers to using the co-branded card.

3.    The Settlement Class Cannot Be Certified Pursuant to Rule 23(b)(2)

The Fifth Amendment prohibits the federal government from depriving persons of their property "without due process of law." U.S. Const., amend. V. That prohibition governs the federal court's entry of a judgment resolving a claim in litigation, which is "a constitutionally recognized property interest." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 807 (1985).

On that basis, the Supreme Court held in *Shutts* that, if a court "wishes to bind an absent plaintiff concerning a claim for *money damages or similar relief at law*, it must provide minimal procedural due process protection," including not only the "best-practicable" notice but also "an opportunity to remove himself from the class" by opting out. *Id.* at 811-12 (emphasis added). Since *Shutts*, the Court has reaffirmed that "mandatory class actions aggregating damages claims implicate the due process principle . . . . deep-rooted [in our] historic tradition that everyone should have his own day in court." *Ortiz*, 527 U.S. at 846 (internal quotation marks omitted). It has repeatedly rejected class certification in cases where the "legal rights of absent class members" would be impermissibly "resolved regardless of either their consent, or, in a class with objectors, their express wish to the contrary." *Id.* at 847.

---

[11]   Office Max has a co-brand relationship with Visa and Saks and TJX have co-brand relationships with MasterCard. Because merchants may surcharge Amex only if they surcharge all other credit cards that they accept, these objectors will not be able to surcharge Amex cards unless they surcharge their co-brand cards as well, which would make no economic sense.

The Supreme Court recently held that in a non-opt-out, Rule 23(b)(2) class action, a federal court may not certify "claims for *individualized* relief," especially for "individualized award[s] of monetary damages." *Dukes*, 131 S. Ct. at 2557 (emphasis in original). Instead, "individualized monetary claims belong in Rule 23(b)(3)," which provides opt-out rights. *Id.* at 2558. Class members' individualized claims cannot be "precluded by litigation they had no power to hold themselves apart from." *Id.* at 2559. Instead, "plaintiffs with individual monetary claims [must] decide for themselves whether to tie their fates to the class representatives' or go it alone – a choice Rule 23(b)(2) does not ensure that they have." *Id.*

A federal court may enter a Rule 23(b)(2) class action judgment, which binds the entire class *without* notice and opt-out rights, only when the class seeks "final *injunctive* relief or corresponding *declaratory* relief [that] is appropriate respecting *the class as a whole*." Fed. R. Civ. P. 23(b)(2) (emphasis added). By its terms, Rule 23(b)(2) does **not** apply in every case in which plaintiffs seek injunctive relief. Rather, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not apply when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Dukes*, 131 S. Ct. at 2557 (emphasis in original). Moreover, "the relief sought must perforce affect the entire class at once." *Id.* at 2558. Accordingly, a class may be certified under Rule 23(b)(2) only in those relatively rare instances in which the class members' interests in the claims are truly indivisible.[12]

---

[12] The classic situation for a mandatory Rule 23(b)(2) is in the civil rights arena. In those cases it is clear that the class members' interests are aligned and thus they will all benefit from and find value in the ultimate injunctive or declaratory relief. In a complex commercial case such as this, however, that uniformity of interests and benefit is missing. Not all merchants have the same interests in surcharging and the degree to which the putative class members may use or even value the relief contained in the settlement will vary dramatically based on each merchant's individual business considerations, the state in which it is located, and other factors.

   *a.*  *Certification of a Rule 23(b)(2) Class Is Improper Because the*
      *Surcharging Rules Change Does Not Apply Equally To All Class*
      *Members*

  In this case, the principal "relief" the settlement provides – the opportunity for class

members to surcharge their customers – does not qualify for Rule 23(b)(2) treatment because it

will not provide relief uniformly, indivisibly, and immediately to the entire class. Surcharging is

barred by law in ten states. Retailers in those states will receive no "relief" from the

settlement.[13] In addition, the settlement allows Amex to discriminate among members of the

putative class by "buying off" the surcharge rights of particular merchants, further balkanizing

what is supposed to be a uniformly affected class. Finally, merchants that are otherwise eligible

to surcharge may decline to do so because of concerns about losing customers or for other

individualized reasons. In short, the changes to the no-surcharge rule will not provide uniform,

indivisible relief to members of the putative class as Rule 23(b)(2) requires.[14]

---

[13] Class Plaintiffs argue that merchants in no-surcharging states will benefit from the surcharging rule change because consumers' payment habits will change and consumers will be more likely to use debit cards for purchases. This "potential" benefit is entirely speculative.

[14] *See Gates v. Rohm & Haas Co.*, 655 F.3d 255, 263 (3d Cir. 2011) (concluding that class could not be certified under Rule 23(b)(2) because medical monitoring relief was not a single injunction that would provide relief to each member of putative class); *Grovatt v. St. Jude Med., Inc. (In re St. Jude Med., Inc. Silzone Heart Valve Prods. Liab. Litig.)*, 425 F.3d 1116, 1122 (8th Cir. 2005) (rejecting Rule 23(b)(2) certification where "each plaintiff's need (or lack of need)" for proposed prospective relief was "highly individualized"); *Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 897–98 (7th Cir. 1999) ("Rule 23(b)(2) is designed for all-or-none cases in which 'final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate.'") (quoting Rule 23(b)(2) advisory committee's note (1966)); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 559 (C.D. Cal. 2012) (denying 23(b)(2) certification because "no single declaration or injunction" would benefit all members of class that included both current and former vehicle owners).

b.     *The Putative Rule 23(b)(2) Settlement Does Not Provide "Final Injunctive Relief"*

Rule 23(b)(2) is limited to class actions seeking "final injunctive or corresponding declaratory relief." *Dukes*, 131 S. Ct. at 2557. The Rule's use of "injunctive relief" requires courts to determine whether the relief is "injunctive" in the sense contemplated by "equity practice." *Id.* Merely calling relief provided in the settlement class context injunctive relief does not make it so, just as *Ortiz* did not accept a "limited fund" created by the agreement of the parties to a settlement as sufficient to justify certification of a Rule 23(b)(1)(B) class.

In this case, the proposed class settlement does not provide any "final injunctive relief or corresponding declaratory relief" to the Rule 23(b)(2) class. The surcharging provision is not "final injunctive relief" because it is contingent on the actions of individual merchants and allows Amex to negotiate contracts with individual merchants to prevent them from surcharging. Settlement Agreement ¶ 10. A resolution that merely establishes a foundation for future, individualized determinations and that gives the defendant the ability to avoid the relief through monetary payments is not "final injunctive relief." *See M.D. v. Perry*, 675 F.3d 832, 847 (5th Cir. 2012); *Jamie S. v. Milwaukee Public Sch.*, 668 F.3d 481, 499 (7th Cir. 2012); *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 826 (7th Cir. 2011); *Kartman v. State Farm Mut. Auto Ins. Co.*, 634 F.3d 883, 892-93 (7th Cir. 2011).

c.     *The Rule 23(b)(2) Class Should Not Be Certified Because It Provides "Monetary Relief"*

In *Dukes*, the Supreme Court held that claims for "monetary relief" may not be certified under Rule 23(b)(2) and that "claims for individualized relief . . . do not satisfy the Rule." 131 S. Ct. at 2557; *see also Hecht v. United Collection Bur., Inc.*, 691 F.3d 218, 222 (2d Cir. 2012) ("Absent class members have a due process right to notice and an opportunity to opt out of class

20

litigation when the action is 'predominantly' for money damages."); *cf. Ortiz*, 527 U.S. at 842, 844 (suggesting that application of Rule 23(b)(3) protections "avoids serious constitutional concerns raised by mandatory class resolution of individual legal claims, especially where a class seeks to resolve future liability in a settlement-only action").

In this case, the antitrust claims asserted against Amex unquestionably sought recovery of money damages, asserting that Amex's anticompetitive conduct was causing the members of the putative class to pay too much for the privilege of accepting Amex cards. *See Marcus* Compl. ¶¶ 47-48, 56-57; *Animal Land* Compl. ¶¶ 48-49. Moreover, the proposed settlement unambiguously seeks to resolve individualized monetary claims, by requiring class members to release claims "for any damages or other monetary relief relating to the period after the Provisions Change Date and continuing to and including the Release Termination Date." Settlement Agreement ¶¶ 27, 31; *see also Richardson v. L'Oreal USA, Inc.*, No. 13-508, 2013 U.S. Dist. LEXIS 158599, at *32-33 (D.D.C. Nov. 6, 2013). The settlement class therefore cannot be certified under Rule 23(b)(2). *See Dukes*, 131 S. Ct. at 2557.

### 4.   Objectors Should Be Permitted To Opt Out

Mandatory class actions, such as a Rule 23(b)(2) class action, have constitutional implications under the Fifth Amendment Due Process Clause and the Seventh Amendment right to trial by jury. *See Dukes*, 131 S. Ct. at 2559; *Ortiz*, 527 U.S. at 846-47; *see also Shutts*, 472 U.S. at 812. If such non-opt-out classes are not evaluated in careful conformity with the terms of Rule 23, they may deprive absent class members of their due process rights to control their own claims and their related right to a trial by jury on those claims.

By placing the Target Objectors in a putative Rule 23(b)(2) settlement class that does not conform to the requirements of the Rule, Amex is attempting to deprive the Target Objectors of

their due process rights – a result that *Dukes* does not permit.[15]  Under such circumstances,

courts have the discretion to order that opt-out rights be given to Rule 23(b)(2) class members.

*See McReynolds v. Richards-Cantave*, 588 F.3d 790, 800 (2d Cir. 2009) ("The right of a class

member to opt-out in Rule 23(b)(1) and (b)(2) actions is not obvious on the face of the rule;

however, the language of Rule 23 is sufficiently flexible to afford district courts discretion to

grant opt-out rights in (b)(1) and (b)(2) class actions." (internal quotation marks omitted)); *see*

*also Johnson v. Meriter Health Serv. Emp. Ret. Plan*, 702 F.3d 364, 370-71 (7th Cir. 2012);

*Jefferson*, 195 F.3d at 898; *Eubanks v. Billington*, 110 F.3d 87, 93 (D.C. Cir. 1997); *Holmes v.*

*Cont'l Can Co.*, 706 F.2d 1144, 1152, 1159 (11th Cir. 1983).  Amex, itself, has recognized that

courts have the discretion to grant opt out rights in connection with mandatory Rule 23(b)(2)

class settlements.  *See* Objection of American Express Company, et al., to the Class Settlement

Agreement in MDL 1720, May 28, 2013, ECF. No. 2648 at 24 (urging the court to grant Amex

the right to opt out of the Rule 23(b)(2) settlement class in MDL 1720).  This court should

provide objectors with the same opt-out rights that Amex sought in MDL 1720.

### B.   The Proposed Settlement Is Not Fair, Reasonable, or Adequate

This Court also "must carefully scrutinize the settlement to ensure its fairness, adequacy

and reasonableness" and must review both "the negotiating process leading up to the settlement

as well as the settlement's substantive terms."  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d

---

[15] *Cf. Molski v. Gleich*, 318 F.3d 937, 956 (9th Cir. 2003) (reversing approval of Rule 23(b)(2) class settlement when court did not afford notice and right to opt out of classwide releases of actual and treble damages claims), *overruled in part on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2004); *Fresco v. Auto. Directions, Inc.*, No. 03-CIV-61063, 2009 U.S. Dist. LEXIS 125233, at *13 (S.D. Fla. Jan. 16, 2009) (certifying injunctive settlement class because settlement "preserve[d] any individual claims that class plaintiffs may have for actual damages, claims which might otherwise have precluded certification under Rule 23(b)(2)") (footnote omitted).

Cir. 2001).  When a settlement is negotiated prior to class certification, "it is subject to a higher degree of scrutiny in assessing its fairness." *Id*.

Courts in the Second Circuit apply a nine-factor test to determine a settlement's substantive fairness.  These factors are:  (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Id.* at 86 (citing *Grinnell Corp.*, 495 F.2d at 463 (internal quotation marks omitted)).  These factors weigh against approval of the Rule 23(b)(2) settlement in this case.

To be sure, Class Plaintiffs emphasize the complexity and expense of this case and the risks involved in pursuing this case as a class action in light of the arbitration provisions and the Supreme Court's holding in *Italian Colors*.  *See* Class Pls.' Mem. at 21-26.  Many of those risks, however, flow directly from Class Plaintiffs' desire to avoid the ADR provisions of their contracts with Amex.  Such risks, however, are not risks associated with the merits of their antitrust arguments and are not pertinent to those members of the class who either do not have ADR requirements or who want to pursue their claims on an individual basis.  Class Plaintiffs should not be able to rely on perceived litigation risks arising from their own individual interests as grounds for approving a settlement that directly impairs the rights of other class members.

Indeed, the fact that the proposed settlement was reached when the claims of the Class Plaintiffs were hanging by a thread due to the arbitration and anti-class resolution clauses of their

agreements with Amex should cause this Court to be more skeptical, rather than less, of the fairness, reasonableness, and adequacy of the settlement.  With Class Plaintiffs confronting the likelihood of an impending, adverse ruling on their remaining claims, they had no incentive or leverage to hold firm for a better settlement.  Instead, all of the normal settlement dynamics impelled them to salvage the class action by obtaining what meager "relief" they could, even if it meant bargaining away the contract and due process rights of absent class members who may want to preserve and vindicate the ADR provisions in their agreements with Amex.

The *Grinnell* factors that consider the stage of proceedings and the amount of discovery that had been conducted also do not weigh in favor of the settlement.  Although the actions have been pending for years, the *Anti-Steering Rules* litigation has focused on the arbitration issue, and for significant periods discovery was stayed while the arbitration issue was resolved.

The ability of Amex to withstand a greater judgment weighs in favor of rejecting the settlement.  The surcharging scheme does not enjoin, impair, or impede the ability of Amex to set merchant fees or force Amex to compete with Visa and MasterCard for merchant acceptance.  To the contrary, the settlement would benefit Amex by *reducing* competition between Amex, Visa, and MasterCard because it requires that Amex cards be surcharged at the same rate as Visa and MasterCard credit cards.  Amex could withstand a greater judgment because the surcharging scheme in the settlement is akin to no judgment against Amex at all.

The limitations placed on the right to surcharge further reduce the value of the surcharging rights to the class.  Because merchants may surcharge Amex cards only if they also surcharge all other credit cards that they accept, Settlement Agreement ¶ 13(b), many merchants will be unable to surcharge due to their other obligations and commercial interests.  Of course, millions of other merchants will be barred from surcharging by state law.  Class Plaintiffs

blithely forecast that such laws will be struck down on constitutional grounds, Class Pls.' Mem. at 27-28, but it is undisputed that the anti-surcharging statutes remain on the books and enforceable.  Class Plaintiffs may assume that the laws ultimately will disappear, but merchants who may need to respond to consumer lawsuits or enforcement actions based on those laws do not have that luxury.

Class Plaintiffs also argue that there are "strong reasons" to "expect widespread adopting of surcharging."  Class Pls.' Mem. at 28.  They base this conclusion primarily on the results of a survey conducted by The Olinger Group.  The Target Objectors will file a Motion to Strike the Declaration of Jude Olinger based on its failure to meet the requirements of Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  From the unrepresentative sample that was surveyed to the biased video that was shown to all survey participants, the survey is fatally flawed and unreliable, and its results cannot be given any weight by this Court.  For the reasons stated in the *Daubert* motion, the survey evidence cannot support the proposition that the surcharging scheme in the settlement has significant value and therefore it should be excluded.

Class Plaintiffs also seek to "prove" that surcharging will be valuable by pointing to the experience of merchants and credit card companies in Australia.  *See* Class Pls.' Mem. at 5-6, 28. That apples-to-oranges comparison fails because the underlying landscape of credit card use, interchange fees, and surcharging in Australia was entirely different from the situation here. There, the Reserve Bank of Australia had already capped interchange fees for Visa and MasterCard credit cards at a low rate.  Merchants were then permitted to surcharge Amex cards – in what is known as differential surcharging – in an attempt to drive customers away from using Amex cards and towards using lower cost Visa or MasterCard cards.   Here, on the other hand,

Amex cards can be surcharged only if Visa and MasterCard credit cards are surcharged as well *and* only if Amex is surcharged at the same rate as Visa and/or MasterCard. Thus the surcharging system this proposed settlement envisions not only will not increase competition over merchant costs between Amex and Visa and MasterCard, it will *destroy* such competition.[16]

The broad release and covenant not to sue imposed by the Rule 23(b)(2) settlement on class members are particularly indefensible. The Supreme Court has cautioned against subverting "the public interest in vigilant enforcement of the antitrust laws," indicating that to "in effect confer [on the defendants] a partial immunity from civil liability for future [antitrust] violations . . . is consistent with neither the antitrust laws nor the doctrine of res judicata." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 329 (1955). Accordingly, courts in this circuit and elsewhere have recognized that releases of future antitrust claims are void as a matter of public policy. *See In re Am. Express Merchants' Litig.*, 554 F.3d 300, 319 (2d Cir. 2009) ("[A]n agreement which in practice acts as a waiver of future liability under the federal antitrust statutes is void as a matter of public policy."), *cert. granted and vacated on other grounds*, 130 S. Ct. 2401 (2010), *adhered to on remand*, 667 F.3d 204 (2d Cir. 2012), *cert. granted*, 133 S. Ct. 594 (2012); *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 578 (E.D. Pa. 2001) ("Because public policy prohibits a release from waiving claims for future violations of antitrust laws, and given that under the proposed release class members would be releasing

---

[16] Class Plaintiffs' argument that the surcharging scheme will permit merchants to steer customers to use debit cards or cash when making their purchases, Class Pls.' Mem. at 31, fails. There is simply no evidence that surcharging all credit cards will cause consumers to switch to debit cards or cash. The estimates of the value of surcharging provided by Alan Frankel, Class Pls.' Mem. at 7, also must be disregarded. Professor Frankel does not break out the purported savings to merchants from the surcharging of *Amex* cards; instead, his estimates are based on total credit card transaction volume in the United States. *Id.* at 6. Presumably this is because the Settlement Agreement does not permit merchants to surcharge Amex alone or differentially from other credit cards.

unlitigated future claims, the releases are too broad.").  Nevertheless, the Settlement Agreement blankets Amex in just such future immunity.

Furthermore, the settlement would release claims arising from virtually any rule Amex has promulgated or may in the future promulgate.  More outlandishly, the release includes claims "with respect to any rule or provision that was or could have been challenged in these Actions as it is alleged to exist, now exists, may be modified in the manner provided in Paragraph 8, subject to Paragraph 10, above, or may in the future exist in the same or substantially similar form thereto."  Settlement Agreement ¶ 30.  Amex has hundreds of rules that apply in some fashion to merchants, and this settlement addresses only a small fraction of those rules.  The release therefore is woefully overbroad and entirely improper because it purports to address claims that were not raised in this case[17] and to release future claims based on Amex's future conduct.[18]

---

[17]  *See Bond v. Ferguson Enters, Inc*., No. 1:09-cv-01662, 2011 U.S. Dist. LEXIS 6976, at *19–20 (E.D. Cal. Jan. 24, 2011) (finding release of "all claims . . . that were or could have been asserted in the Lawsuit based upon the facts alleged therein . . . arising out of any act, omission, transaction, or event that occurred or is alleged to have occurred up to the date of this Agreement" overbroad because it released claims unrelated to those in original action) (first alteration in original); *Karvaly v. eBay, Inc*., 245 F.R.D. 71, 88 (E.D.N.Y. 2007) (criticizing release that "would constitute a waiver of claims completely unrelated to this action that could be brought under any of the statutes or common-law theories" alleged in complaint and noting that release "purports to strip millions of individuals of their rights to sue the defendants upon a wide range of offenses that have nothing to do with the misconduct alleged in the present action, for no more consideration than PayPal's agreement to make certain superficial changes to its website"); *Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C*., No. CV-04-2195, 2006 U.S. Dist. LEXIS 89226, at *33-36 (E.D.N.Y. Dec. 11, 2006) (ordering modification of release purporting to waive "all claims . . . or liabilities of any kind whatsoever in law or in equity, arising out of agreement or imposed by federal or state statute, common law or otherwise, from the beginning of time to the date this Agreement is signed" to include only "claims involving 'identical factual predicate'"); *Schwartz*, 157 F. Supp. 2d at 566-67, 578 (declining to approve settlement of antitrust challenge asserting that NFL unlawfully "bundled" its satellite package in which NFL would offer, for one year, "Single Sunday Ticket" package that reduced bundling on satellite TV in exchange for class' release of all current and future claims related to NFL broadcasting – including bundling claims related to cable TV and the internet – for as long as defendants continued to offer the "unbundled" satellite package, and concluding that the broad release

**C.      Notice was Inadequate to Inform Absent Putative Class Members**

Finally, the settlement cannot be approved because the notice to putative class members was inadequate.  Due process requires that absent class members be given meaningful notice regarding the terms of the proposed settlement, including the rights they are being forced to surrender.  The right to object to a settlement is meaningless if the notice does not advise class members that their rights will be impaired and, as a result, does not allow them to protect their interests.[19]

In this case, the notice failed to inform absent class members that the proposed settlement agreement may strip them of their contractual ADR rights, whether they wish to exercise those rights or not. ████████████████████████████████████████

---

language permitted defendants to continue expanding most of their alleged bundling activities with impunity).

[18] *See Anderson v. Beland (In re Am. Express Fin. Advisors Secs. Litig.)*, 672 F.3d 113, 138 (2d Cir. 2011) (addressing scope of earlier classwide release and concluding that, "to the extent that [the claims] involve conduct occurring after the Class Period, [they] cannot be Released Claims"); *Authors Guild v. Google Inc.*, 770 F. Supp. 2d 666, 677 (S.D.N.Y. 2011) (concluding that release "from liability for certain future acts" amounted to no more than "an attempt to use the class action mechanism to implement forward-looking business arrangements that go far beyond the dispute before the Court in this litigation"); *Schwartz*, 157 F. Supp. 2d at 578 (declining to certify release that would not only bar past claims – which the court recognized as a permissible use of settlement releases – but also claims based on defendant's future conduct); *Shults v. Champion Int'l Corp.*, 821 F. Supp. 520, 524 (E.D. Tenn. 1993) ("No settlement that precludes future, unknown causes of action can be considered fair, reasonable, or in the best interests of the class as a whole.").

[19] *See Vassalle v. Midland Funding, LLC*, 708 F.3d 747, 759, 759 n.2 (6th Cir. 2013) (notice did not inform class members of release's effect on related lawsuits and failed to identify "principal ground" on which class member might object to settlement; right to opt out is "illusory" when notice failed to inform class members "of their most significant ground of objection"); *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1229 (11th Cir. 1998) (no claim preclusion because notice insufficient to inform plaintiff that claims akin to his were part of class claims); *Nat'l Super Spuds v. N.Y. Mercantile Exch.*, 660 F.2d 9, 16 (2d Cir. 1981) (lack of objection "means even less when, as here, the notice of settlement did not adequately apprise class members who also held claims in respect of unliquidated contracts that these too were being placed on the block although those class members were to receive nothing in return").

███████████████████████  Moreover, the notice failed to explain that absent class

members would be releasing all claims for future damages. *See* Settlement Agreement ¶ 27.

## IV.    CONCLUSION

The Target Objectors strongly object to the proposed settlement, which violates the Rules

Enabling Act, requires certification of a class that does not comply with the criteria of Rule 23(a)

and represents an improper use of Rule 23(b)(2), robs merchants of their due process rights and

Seventh Amendment right to a jury trial, and is not fair, reasonable, or adequate.  This Court

should reject the proposed settlement.  In the alternative, the Court should exercise its discretion

to grant opt-out rights to the Target Objectors.

DATED:  June 6, 2014

CLARICK GUERON REISBAUM LLP

By:  _____

        Gregory A. Clarick, gclarick@cgr-law.com
        Nicole Gueron, ngueron@cgr-law.com
        Isaac Zaur, izaur@cgr-law.com
        220 Fifth Avenue
        14th Floor
        New York, New York 10001
        (212) 633-4310

VORYS, SATER, SEYMOUR AND PEASE LLP

        Michael J. Canter, mjcanter@vorys.com
        Robert N. Webner, rnwebner@vorys.com
        Alycia N. Broz, anbroz@vorys.com
        52 East Gay Street
        Columbus, Ohio 43215
        (614) 464-6400

*Attorneys for the Target Objectors*