UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

IN RE: AMERICAN EXPRESS ANTI-STEERING
RULES ANTITRUST LITIGATION

------------------------------------------------------------

This Document Relates to:

All Individual Merchant Plaintiff Actions

08-CV-2315 (NGG) (RER)
08-CV-2316 (NGG) (RER)
08-CV-2317 (NGG) (RER)
08-CV-2380 (NGG) (RER)
08-CV-2406 (NGG) (RER)
11-CV-0337 (NGG) (RER)
11-CV-0338 (NGG) (RER)

------------------------------------------------------------X

**MEMORANDUM & ORDER**

**11-MD-2221 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

The Merchant Plaintiffs[1] in this action move the court to compel Defendants American Express Company and American Express Travel Related Services Company, Inc. (collectively, "Amex") to answer the amended complaint, notwithstanding the pendency of the briefing schedule on Amex's already-served motion to dismiss or, in the alternative, for summary judgment. (Sept. 7, 2018, MPs Letter Mot. to Compel ("Mot. to Compel") (Dkt. 828 at ECF p.1); see July 10, 2018, Order (Dkt. 811).) For the following reasons, the motion to compel is GRANTED and the court DENIES WITHOUT PREJUDICE Amex's anticipated motion to dismiss.

---

[1] The Merchant Plaintiffs are Ahold U.S.A., Inc., Albertson's LLC, The Great Atlantic & Pacific Tea Company, Inc., BI-LO, LLC, CVS Pharmacy Inc., H.E. Butt Grocery Co., Hy-Vee, Inc., The Kroger Co., Meijer, Inc., Publix Super Markets, Inc., Raley's Inc., Rite Aid Corp., Rite Aid Hdqtrs. Corp., Safeway Inc., Supervalu, Inc. and Walgreen Co.

1

# I. BACKGROUND

## A. Procedural History

On July 9, 2018, following the Supreme Court's decision in Ohio v. American Express Co., 138 S. Ct. 2274 (2018), the parties jointly proposed a schedule for the Merchant Plaintiffs to amend their complaint, for Amex to move for summary judgment on the amended complaint, and for the completion of additional discovery. (See July 9, 2018, Letter (Dkt. 810).) The court granted the parties' various requests, with some modifications, the following day. (See July 10, 2018, Order.) Per the schedule, the Merchant Plaintiffs filed their amended complaint on July 27, 2018. (Am. Compl. (Dkt. 814).) The amended complaint states three causes of action: monopolization in violation of § 2 of the Sherman Act; attempt to monopolize in violation of § 2 of the Sherman Act; and unreasonable restraint of competition in violation of § 1 of the Sherman Act. (Id. ¶¶ 68-85; see Amex Mem. in Supp. of Mot. to Dismiss (Dkt. 828 at ECF p.6) at 2.)[2]

Under the original briefing schedule set by the court, Amex was to serve its motions for summary judgment—one as to the allegations of one-sided and Amex-only markets, and one "additional" motion as to the allegation of a two-sided market that includes all general purpose credit and charge cards ("GPCC")—on the Merchant Plaintiffs by no later than August 17, 2018. (See July 10, 2018, Order.) On August 6, 2018, Amex requested that it "be given leave to file a summary judgment motion directed to the Merchant Plaintiffs' allegations regarding competitive harm in a two-sided market after the new discovery is complete." (Aug. 6, 2018, Letter (Dkt. 815) at 2.) The court granted Amex's request and set the briefing schedule on the motion for summary judgment as to the Merchant Plaintiffs' claims on the two-sided, all-GPCC market to

---

[2] Although the court ultimately decides that Amex's pending partial motion to dismiss or, in the alternative, for summary judgment is not properly consider a motion to dismiss, the court refers to this motion as a "motion to dismiss" in its citations because that is how Amex refers to it. (See Amex Mem. in Supp. of Mot. to Dismiss at 1.)a

2

take place following the completion of additional fact discovery. (See Aug. 6, 2018, Min. Entry; Aug. 17, 2018, Order.)

The briefing schedule for Amex's original motion for summary judgment, which is as to the Merchant Plaintiffs' other alleged relevant markets, remains in place. Accordingly, on August 17, 2018, Amex served on the Merchant Plaintiffs a motion to dismiss or, in the alternative, for summary judgment ("Amex's Motion"). (See Amex Mem. in Supp. of Mot. to Dismiss.) Amex did not answer the amended complaint. Ten days later, the Merchant Plaintiffs wrote to Amex to express their view that, because Amex's Motion "does not seek dismissal of any cause of action," service of the motion did not toll Amex's responsibility to answer the complaint. (Aug. 27, 2018, Letter from MPs to Amex (Dkt. 828 at ECF p.64).) Following an exchange of letters, the Merchant Plaintiffs offered Amex a compromise by which Amex would "answer just a handful of paragraphs" and "submit any defenses or affirmative defenses and also indicate whether it will seek a trial by jury." (Sept. 4, 2018, Letter from MPs to Amex (Dkt. 828 at ECF p.74).) Amex refused (Sept. 5, 2018, Letter from Amex to MPs (Dkt. 828 at ECF p.76)) and this motion followed.

### B. The Motion to Compel

As stated above, the Merchant Plaintiffs seek an order from the court compelling Amex to file its answer and defenses to the amended complaint within seven days, or, in the alternative, to answer certain paragraphs of the amended complaint and provide a statement of defenses and affirmative defenses (the "Motion to Compel"). (Mot. to Compel at 4.) The Merchant Plaintiffs submit that Amex's Motion attacks certain allegations within each of the three claims brought by the Merchant Plaintiffs, but does not seek dismissal of any claim in its entirety. (Id. at 2.) Accordingly, the Merchant Plaintiffs argue, because they would still be able to "pursue each of

their Counts or causes of action based on the unchallenged allegation of a two-sided credit card relevant market," Amex's Motion is not a proper motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and thus does not suspend Amex's obligation to answer the amended complaint. (Id. at 2, 4.) Amex argues that Amex's Motion is a proper Rule 12(b)(6) motion to dismiss in that it seeks "dismissal of all claims based on three of the four alleged market definitions." (Amex Opp'n to Mot. to Compel ("Amex Opp'n") (Dkt. 830) at 2-3.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(a)(4) provides that service of a Rule 12 motion suspends the movant's time to file a responsive pleading until fourteen days after the court issues a decision on the motion. While Rule 12 does not explicitly contemplate the filing of a partial motion to dismiss—i.e., "a motion to dismiss only certain claims," Lombardo v. Dr. Seuss Enters., L.P., No. 16-CV-9974 (AKH), 2017 WL 1378413, at *3 (S.D.N.Y. Apr. 7, 2017)— it is the majority rule among courts in the Second Circuit that "the filing of any motion under Rule 12 postpones a defendant's time to answer," Dekom v. New York, No. 12-CV-1318 (JS), 2013 WL 3095010, at *5 (E.D.N.Y. June 18, 2013); accord Gortat v. Capala Bros., Inc., 257 F.R.D. 353, 366 (E.D.N.Y. 2009). See Finnegan v. Univ. of Rochester Med. Ctr., 180 F.R.D. 247, 250 (W.D.N.Y. 1998) (collecting cases). "If the opposite rule controlled and partial motions to dismiss did not suspend a party's obligation to reply to additional claims, the result would be 'a procedural thicket' of piecemeal answers that would poorly serve judicial economy." Gortat, 257 F.R.D. at 366 (quoting Ricciuti v. N.Y.C. Transit Auth., No. 90-CV-2823 (CSH), 1991 WL 221110, at *2 (S.D.N.Y. Oct. 3, 1991)).

4

## III. DISCUSSION

The court's analysis proceeds as follows. First, the court considers the central question of whether Amex's Motion is a motion to dismiss or a motion for summary judgment. If Amex's Motion is properly classified as a motion to dismiss, then the court must deny the Motion to Compel because, as both sides agree, the submission of a Rule 12 motion tolls the time in which the movant must respond to all allegations in the operative complaint. If, however, Amex's Motion is properly classified as a motion for summary judgment, the court must consider the second question—whether Amex should be able to move for summary judgment without having answered the amended complaint.

### A. Whether Amex's Motion Is a Motion to Dismiss or a Motion for Summary Judgment

Under Rule 12, a defendant may move to dismiss any or all of the claims in a complaint prior to submitting his answers and defenses. See Fed. R. Civ. P. 12(b). In order to determine whether a motion falls under Rule 12, the court must therefore ask whether the motion seeks dismissal of any claim in the complaint. If the answer is no, then the motion—even if styled as a "motion to dismiss"—is not a motion to dismiss at all.

The Merchant Plaintiffs contend that Amex's Motion is actually a motion for summary judgment disguised as a motion to dismiss. They submit that Amex's Motion, rather than seeking to dismiss any of the claims made by the Merchant Plaintiffs in their amended complaint, "attacks only evidentiary formulations of the relevant market while leaving the causes of action under §§ 1 and 2 of the Sherman Act unchallenged." (MPs Reply to Amex Opp'n ("MPs Reply") (Dkt. 829) at 1 (emphasis added); see Mot. to Compel at 4.) The Merchant Plaintiffs point out the fact that, "[e]ven if Amex's [M]otion is granted, [they] can still pursue each of their Counts or causes of action based on the unchallenged assertions of a two-sided

5

credit card relevant market." (Mot. to Compel at 2.) Accordingly, they argue, Amex's Motion does not actually seek to dismiss any "claim" and thus it cannot be construed as a Rule 12 motion to dismiss. (See MPs Reply at 1.) They additionally argue that Amex's Motion "cites to factual material from outside the [amended c]omplaint," something that makes it "on its face a partial motion for summary judgment pursuant to Rule 56(a)." (Id.)

Starting from the unchallenged proposition that a "partial motion to dismiss will suspend the time to answer those claims or counterclaims that are not subject to the motion," Amex argues that the submission of its motion suspended its time to answer the amended complaint because Amex "seek[s] partial dismissal of all claims based on three of [the Merchant] Plaintiffs' four alleged market definitions." (Amex Opp'n at 1-2 (first quoting Barbagallo v. Marcum LLP, 820 F. Supp. 2d 429, 443 (E.D.N.Y. 2011)).) Even if Amex's Motion does not seek dismissal of whole claims in the amended complaint, Amex argues that its motion would still be a proper motion to dismiss because "Rule 12(b)(6) permits dismissal of claims and counts in a complaint, in whole or in part." (Id. at 2.) So, because Amex's Motion seeks partial dismissal of some claims and because the motion "targets the majority of the amended complaint," "under Rule 12(a)(4) no further response is needed or appropriate." (Id. at 2-3.) Finally, as to the Merchant Plaintiffs' contentions regarding Amex's citations to factual material outside the pleadings, Amex submits that its treatment of this material is proper for the "accepted practice" of moving to dismiss and, in the alternative, moving for summary judgment. (Id. at 3.)

Although the court is loath to insert decision trees within decision trees, the court has broken its analysis of the central question raised by the Motion to Compel into four further inquiries: first, how to define the word "claim"; second, delineating the "claims" made by the

6

Merchant Plaintiffs in the amended complaint; third, whether Amex's Motion seeks dismissal of any "claims"; and fourth, whether a party may move to dismiss part of a "claim."

1. What Is a "Claim"?

The Second Circuit defines a "claim" as "a set of facts giving rise to one or more legal rights." Schwartz v. Eaton, 264 F.2d 195, 196 (2d Cir. 1959); see Gottesman v. Gen. Motors Corp., 401 F.2d 510, 512 (2d Cir. 1968) ("The word claim denotes 'the aggregate of operative facts which give rise to a right enforceable in the courts.'" (quoting Original Ballet Russe v. Ballet Theatre, 133 F.2d 187, 189 (2d Cir. 1943))). A "claim for relief must indicate the existence of a cause of action," i.e., "a claim that facts exist which, under our legal system, are recognized as entitling the claimant to judicial action in vindication of a right or in remedying a wrong." Gold Seal Co. v. Weeks, 209 F.2d 802, 807 (D.C. Cir. 1954). No matter how a complaint is organized, one cause of action exists for each "different sets of facts underpinning each effective count." In re M&T Bank Corp. ERISA Litig., No. 15-CV-375, 2018 WL 4334807, at *4 n.7 (W.D.N.Y. Sept. 11, 2018) (citing Schwartz, 264 F.2d at 196-97). A cause of action that is based on one set of facts but that contains multiple, alternative legal theories supporting relief is still just one "claim." See Scientech, Inc. v. Metro-North R.R., No. 01-CV-8210 (LAK), 2002 WL 1813854, at *2 (S.D.N.Y. Aug. 7, 2002).

Neither side may evade this rule with artful pleading. For example, a plaintiff bringing multiple claims under one legal cause of action cannot simply collapse all of his distinct claims into one central "count," thereby proofing his complaint from a partial motion to dismiss. On the flip side, a defendant may not simply seek adjudication of facts in a complaint that are not dispositive of any of the pleas for legal redress. In order to define the "claims" in a complaint—and thus determine whether a motion seeks dismissal of any or all of these claims—the court

7

must look beyond any formal distinctions among "counts," "causes of action," and "claims," and examine the facts alleged and the legal relief sought.

2. What Are the "Claims" in the Amended Complaint?

As set forth above, the amended complaint asserts claims based on three causes of action. (Am. Compl. ¶¶ 68-85.) First, to establish monopolization in violation of § 2, the Merchant Plaintiffs must prove that Amex (1) possessed monopoly power in the relevant market, and (2) willfully acquired or maintained that monopoly power. See New York ex rel. Schneiderman v. Actavis PLC, 787 F.3d 638, 651 (2d Cir. 2015). Second, to establish attempted monopolization in violation of § 2, the Merchant Plaintiffs must show (1) that Amex has engaged in anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power in the relevant market. Id. Finally, to prove a violation of § 1, the Merchant Plaintiffs must establish that Amex's behavior has had an actual adverse effect on competition as a whole in the relevant market, or that Amex has sufficient power in the relevant market to cause an adverse effect on competition, at which point the burden shifts to Amex to offer evidence of the procompetitive effects of the restraint at issue. See United States v. Am. Exp. Co., 838 F.3d 179, 193-95 (2d Cir. 2016), aff'd sub nom. Ohio, 138 S. Ct. 2274. As this court has previously recognized, in order to analyze all three of these causes of action the court will be required to "determine the contours of the relevant antitrust market and thereby define an appropriate context for the remainder of its analysis." United States v. Am. Exp. Co., 88 F. Supp. 3d 143, 170 (E.D.N.Y. 2015), rev'd on other grounds, 838 F.3d 179.

The fact that a relevant market must be determined in order to find a Sherman Act violation does not, however, mean that there are twelve "claims" in the amended complaint, one for each cause of action based on the four separate alleged markets. Rather, as set forth above, a

"claim" is a set of facts that can support liability for the defendant under a cause of action. Here, there is not one cause of action that depends on the existence of a certain type of market, and a separate cause of action for a different type of market; instead, each set of alleged facts—the monopolistic activity, the attempted monopolistic activity, and the restraint on competition—requires the existence of, but is not affected by the identity of, an underlying relevant market. In seeking to "dismiss" the Merchant Plaintiffs' claims related to a single-sided market, Amex claims that the Supreme Court's decision in Ohio "established that a two-sided relevant market definition applies for the analysis of Amex's two-sided transaction platform." (Amex Mem. in Supp. of Mot. to Dismiss at 8 (emphasis omitted).) Amex does not argue that certain facts unique to the single-sided market legal theory are insufficient to support liability under the Sherman Act, but rather that the underlying theory of liability is itself foreclosed. In the amended complaint, the Merchant Plaintiffs say that they plan to "present evidence . . . that satisfies the Supreme Court test for when a two-sided market should be treated as a one-sided market." (Am. Compl. ¶ 57; see Amex Mem. in Supp. of Mot. to Dismiss at 5.) This evidence does not relate to Amex's actions that allegedly harmed the Merchant Plaintiffs, i.e., the Merchant Plaintiffs' "claim" to liability; rather, the evidence consists of general observations about the transaction market in which Amex operates that are not specific to the harm alleged in this case. (See Am. Compl. ¶ 57.) Similar reasoning applies to the Merchant Plaintiffs' allegation of an Amex-only market. (See id. ¶ 67; cf. Amex Mem. in Supp. of Mot. to Dismiss at 9-10 (discussing the evidence necessary to prove an Amex-only market).)

In the end, the Merchant Plaintiffs' allegations related to the "relevant market" do not change the harms alleged, nor do they change the causes of action under which relief is sought. Accordingly, the Merchant Plaintiffs' amended complaint states three claims: one for each set of

9

facts pursuant to which Amex allegedly harmed the Merchant Plaintiffs, each of which supports relief under a different Sherman Act cause of action.

3. Does Amex's Motion Seek to Dismiss a "Claim"?

Amex's Motion seeks dismissal of "all claims based on three of Plaintiffs' four alleged market definitions." (Amex Opp'n at 1; accord Amex Mem. in Supp. of Mot. to Dismiss at 3.) As set forth in the previous section of this opinion, such a motion does not actually seek dismissal of any "claims" in the amended complaint. The two-sided market theory can support liability under all three causes of action, and there is no "different set of facts" under the two-sided market theory for which the Merchant Plaintiffs are claiming an entitlement to relief. The Merchant Plaintiffs are thus correct that the two-sided market theory is an "alternative evidentiary formulation[] of the relevant market" rather than a separate claim unto itself. (See MPs Reply at 1.) Amex's Motion, which purports to seek "dismissal or summary judgment for all claims based on . . . three relevant markets—those with one-sided or Amex-only market definitions"—thus does not seek dismissal of any claims at all. (Amex. Mem. in Supp. of Mot. to Dismiss at 3; see id. at 8, 18.) Amex's Motion would be a motion to dismiss if it sought to foreclose all paths to liability under a certain cause of action; since it does not, it is properly thought of as a motion for partial summary judgment.

4. Can Amex's Motion Still Be Classified as a Motion to Dismiss Even Though It Does Not Seek Dismissal of a "Claim"?

As the Second Circuit has long held, "part only of a single claim cannot be adjudicated with finality." Rieser v. Baltimore & Ohio R.R. Co., 224 F.2d 198, 204 (2d Cir. 1955). Nevertheless, Amex claims that its motion is proper under Rule 12(b)(6) because "Rule 12(b)(6) permits dismissal of claims and counts in a complaint, in whole or in part." (Amex Opp'n at 2.) Amex is incorrect.

First, the cases that Amex cites to bolster its mistaken argument about Rule 12 do not actually support Amex's reading of the law. (Cf. id. at 2-3.) As the Merchant Plaintiffs point out, in all of these cases the defendants—unlike Amex—actually did move to dismiss separate claims. (See MPs Reply at 1-2.) For example, in Decker v. Massey-Ferguson, Ltd., 681 F.2d 111 (2d Cir. 1982), the Second Circuit affirmed the dismissal of multiple counts of fraud against one defendant while holding that a separate claim of fraud against the same defendant "based upon the making of allegedly wrongful foreign payments" could proceed. Id. at 121. That case neatly illustrates the applicable rule in this case: Where two "claims" share a legal basis, but do not overlap in facts, they are separate claims subject to separate treatment on a motion to dismiss; where two "claims" share facts and a cause of action, but not a legal theory supporting liability, they are not separate claims at all but rather alternative formulations of the same claim. This rule applies to the other cases cited by Amex, rendering them unhelpful for Amex's purposes. See In re Banco Bradesco S.A. Sec. Litig., 277 F. Supp. 3d 600, 670 (S.D.N.Y. 2017) (granting in part and denying in part the motion to dismiss securities claims based on different alleged misstatements); Reyes v. Sofia Fabulous Pizza Corp., No. 13-CV-7549 (LAK), 2014 WL 1744254, at *3 (S.D.N.Y. Apr. 24, 2014) (granting motion to dismiss claims for damages based on certain factual allegations). In another case, the district court denied a motion to dismiss on the grounds that, at the pleading stage, parties are not entitled to "a determination . . . that certain of the alternative legal theories under which [the plaintiff] might be entitled to relief will not fly." Scientech, 2002 WL 1813854, at *2. What Amex seeks from the court in Amex's Motion is much more similar to what the court rejected in Scientech, rather than the procedural outcomes approved of in Decker, Banco Bradesco, and Reyes.

Second, it is of no moment that Amex's Motion targets "more than a 'significant portion of the complaint.'" (See Amex Opp'n at 3 (quoting Lombardo, 2017 WL 1378413, at *3).) The relevant question is whether the motion seeks dismissal of any "claim," no matter how many of the factual allegations in the complaint are relevant to that claim. The court in Lombardo admits this fact, stating the basic proposition that "[a] party may file a motion to dismiss only certain claims." 2017 WL 1378413, at *3 (emphasis added). If this rule is, as the court believes it to be, a bright-line rule, it should not matter whether a motion seeks dismissal of one claim of many, or multiple claims that make up a "significant portion of the complaint."[3] Because Amex's Motion does not seek dismissal of any claims in the amended complaint, it is unimportant that precluding the Merchant Plaintiffs from proceeding on three of their four alleged relevant markets can be thought of as striking at a "significant portion of the complaint."

Third, the efficiency concerns that Amex raises are not well taken. It is true that, in some circumstances, permitting the defendant to defer its answer is necessary to avoid "piecemeal answers that would poorly serve judicial economy." (Amex Opp'n at 2 (quoting Gortat, 257 F.R.D. at 366).) Here, though, that concern cuts in the opposite direction. When the court ordered a briefing schedule on Amex's anticipated motions for summary judgment, it anticipated that Amex would answer the complaint before submitting those motions but, even if Amex chose to move to dismiss rather than answer the complaint, that the court would be able to decide the motions in tandem. This understanding was upset by Amex's August 6, 2018, letter, in which Amex requested that the briefing schedule on its anticipated motion for summary judgment as to

---

[3] The court recognizes that concerns of judicial economy may be more apt where the partial motion to dismiss strikes at a larger portion of claims in the complaint, though this is not a dispositive factor in analyzing whether a motion tolls the time in which to respond to the complaint. See Ricciuti, 1991 WL 221110, at *2 ("As a matter of policy and judicial economy[, the conclusion that any Rule 12 motion suspends the time to answer any claim] is required.").

12

the two-sided, all-GPCC market allegations be delayed until December 2018. (Aug. 6, 2018, Letter.) The court had no problem with Amex requesting this extension; indeed, given the "new factual allegations" and anticipated "additional discovery," such a request was perfectly sensible. (Id.) But it does not now strike the court as necessary to treat Amex's Motion as a motion to dismiss solely to prevent the submission of "piecemeal answers," even though all parties are aware that a motion for summary judgment on the remaining allegations is forthcoming. Instead, the court believes it makes sense to put all of these motions back on the same track and defer decision on whether Amex is entitled to summary judgment under all four alleged relevant markets until such a motion can be decided at the same time. Just as courts have expressed concern about piecemeal answers giving rise to legal waste, so too is this court concerned about piecemeal motions to dismiss, broken out not by claim but by aspects of each claim upon which final judgment does not rest, resulting in judicial inefficiency.

Finally, the court wishes to address Amex's statement that "[f]iling Rule 12 and Rule 56 motions together in the alternative is accepted practice in this Circuit." (Amex Opp'n at 3.) That is true enough—where a defendant seeks to dismiss a claim, he may also move for summary judgment on that claim if he believes material outside the pleadings is required to establish his entitlement to judgment as a matter of law. See, e.g., EVO Merch. Servs., LLC v. Fire USA Inc., No. 12-CV-6152 (LDW), 2014 WL 3950653, at *2 (E.D.N.Y. Aug. 11, 2014) (reviewing a motion to dismiss under the "alternative theory" that it is a motion for summary judgment because the court "considered matters outside the pleadings submitted by the parties"); see also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1366 (3d ed. 2004). The question here is not whether Amex can succeed on its motion to dismiss a claim if it were permitted to submit material outside the pleadings, but rather whether Amex seeks to dismiss a

claim at all. Because it does not, the question about whether Amex properly moved in the alternative for summary judgment or made reference to too many material outside the pleadings in its motion to dismiss is moot.

\* \* \*

Under Amex's conception of Rule 12, the tail wags the dog. Amex's proposed rule would permit parties to move to dismiss part of a complaint on the basis that any one of the plaintiff's legal theories is faulty. That formulation of Rule 12 would warp the doctrine and make it much easier for a defendant to avoid answering a well-pleaded complaint where otherwise necessary. Because Rule 12 requires dismissal of a "claim," and because Amex does not seek to dismiss any "claims" in the amended complaint, Amex's Motion cannot be considered a motion to dismiss.

### B. Whether Amex Must Answer the Complaint

Having established above that Amex's Motion is not a motion to dismiss, but rather a motion for partial summary judgment, the question becomes one of remedy. The Merchant Plaintiffs desire an order from this court requiring Amex to file its answer and defenses to the amended complaint within seven days. (Mot. to Compel at 4.) Amex argues that no answer is needed because "the lack of an answer to Plaintiffs' new conclusory allegations will . . . not affect the progress of this case." (Amex Opp'n at 4.) While Amex may well be correct that "Amex's additional reports . . . will say far more about Amex's positions than any answer would" (id.), the court will still require Amex to answer the entirety of the amended complaint prior to moving for summary judgment later this fall. It would appear that Amex is not prepared to move to dismiss or for summary judgment as to allegations of a two-sided, all-GPCC market until after discovery; accordingly, the court cannot dismiss or grant summary judgment on any

claim at this point. The deadline to answer the complaint is thus not tolled pursuant to Rule 12(a)(4) and Amex must answer the complaint. The court agrees with the Merchant Plaintiffs that, if the court were to hold otherwise, it would send a signal that "no defendant would ever have to answer the complaint." (MPs Reply at 2.)

Rather than order an answer within 7 days as requested by the Merchant Plaintiffs, the court will strike a balance between that request and the normal limit under Rule 12(a)(1) and grant Amex 14 days in which to answer and submit defenses to the amended complaint.

## IV. CONCLUSION

For the foregoing reasons, the Merchant Plaintiffs' Motion to Compel (Dkt. 828) is GRANTED. American Express's anticipated Motion to Dismiss is DENIED WITHOUT PREJUDICE and the pending briefing schedule for that motion is terminated. American Express is DIRECTED to file its answer and defenses to the amended complaint within 14 days of the entry of this memorandum and order. The court understands that it previously set a briefing schedule for American Express's anticipated motion for summary judgment as to the two-sided, all-GPCC market; nevertheless, the court DIRECTS the Merchant Plaintiffs and American Express to consult with Magistrate Judge Ramon E. Reyes as to whether any adjustments to the briefing schedule are necessary, given the court's decision in this memorandum and order. The parties are further DIRECTED to advise the court of any adjustments they believe should be made to the briefing schedule for American Express's anticipated motion or motions for summary judgment.

SO ORDERED.

Dated: Brooklyn, New York
September 26, 2018

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge