

MICHAEL HAUSFELD  1700 K Street, NW
Chairman   Suite 650
Washington, DC 20006

202-540-7140 Direct
202-540-7200 Main
202-540-7201 Fax

May 22, 2019

Hon. Nicholas G. Garaufis
United States District Court for the Eastern District of New York
Room 1426 S
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *In re American Express Anti-Steering Rules Antitrust Litigation*,
No. 11-MD-2221 (NGG)(RER)

Dear Judge Garaufis:

Plaintiffs respectfully submit this letter to bring to the Court's attention the Supreme Court's recent 5-4 decision in *Lamps Plus, Inc. v. Varela*, No. 17-988, 2019 WL 1780275 (U.S. Apr. 24, 2019). In *Lamps Plus*, the Court held that class arbitration may be compelled under the Federal Arbitration Act ("FAA") only when it is affirmatively specified in the parties' agreement. *Id.* at *8.

It flows then that under *Lamps Plus*, the Amex Class Plaintiffs in this case cannot obtain in arbitration the "market-wide" relief they unambiguously seek, because it has neither been expressly included nor even contemplated under the terms of Amex's Card Acceptance Agreement ("CAA").[1] As Plaintiffs have argued, market-wide relief is necessary in this case to eliminate Amex's anticompetitive anti-steering rules ("ASRs") on a market-wide basis. *See* Opp. Brief, at 4. And granting market-wide relief addresses the fact that, as this Court has found and the Supreme Court let stand, *all* consumers – not just Amex cardholders – pay higher retail prices as a result of Amex's ASRs.[2] Put simply, relief to a single merchant alone would not result in merchant fee competition, balancing merchant harm with consumer benefit.[3]

---

[1] *See, e.g.,* Second Am. Compl. ("SAC"), ¶¶ 99–100, Dec. 17, 2018, ECF No. 864; Pls.' Mem. of Law in Opp'n to Defs' Mot. (1) to Stay the Proc. and Compel Arb. & (2) to Dismiss the Second Am. Consol. Class Action Compl., 3-8, Mar. 15, 2019, ECF No. 879 ( "Opp. Brief").
[2] *United States v. Am. Express Co.*, 88 F. Supp. 3d 143, 150, 177 (E.D.N.Y. 2015).
[3] *Lamps Plus* also supports Plaintiffs' contention that this case falls within the "effective vindication" exception to requiring arbitration under the FAA because Plaintiffs would be precluded from "vindicat[ing] their rights under the antitrust laws to obtain the necessary market-wide injunction" needed to effectively pry open competition in the market. *Id*. at 4–5.



PAGE 2
May 22, 2019

Were Amex's motion to compel arbitration granted, it would produce both an unmanageable result and unrealistic conclusion – namely, that the outcome of having to arbitrate hundreds, if not thousands, of individual arbitrations could actually restore market integrity or achieve market equilibrium. Indeed, Uber recently had to confront the filing of 12,501 individual arbitrations after a "winning" decision holding that the company's arbitration contracts are enforceable.[4] Tellingly, such a result in this case would undercut the touted benefits of private dispute resolution, such as "lower costs, greater efficiency and speed." *Lamps Plus*, 2019 WL 1780275, at *5.

Plaintiffs have enclosed a copy of the recent *Lamps Plus* decision for Your Honor's convenience.

Respectfully submitted,

Michael D. Hausfeld
**HAUSFELD LLP**
1700 K Street, NW
Suite 650
Washington, DC 20006

Enclosure

---

[4] *See O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087 (9th Cir. 2018) (decertifying a class of California Uber drivers based on the Ninth Circuit's holding in *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir. 2016) that Uber's arbitration provisions were enforceable); *Abadilla v. Uber Techs., Inc.*, No. 18-cv-7343 (N.D. Cal. Dec. 5, 2018) (12,501 drivers petitioned to enforce Uber's arbitration provisions mandating claims be referred to JAMS, requiring Uber to pay the initial $1,500 filing fee for each claim); *see also Abarca v. Lyft, Inc.*, No. 18-cv-07502 (N.D. Cal. Dec. 13, 2018) (3,420 Lyft drivers petitioned to arbitrate individual claims against Lyft).